## MERRILL *v.* TOBIN.

*(Circuit Court, N. D. Iowa, C. D. January 24, 1887.)*

1. PUBLIC LANDS—SWAMP LANDS—FITNESS FOR CULTIVATION.
    Lands which, by reason of swamp or overflow, become unfit for cultivation, are within the purview of the act of congress of 1850, granting certain swamp and overflowed lands to the state of Iowa.

2. LIMITATION OF ACTIONS—ADVERSE POSSESSION—NATURE OF.
    Where the lands in question are, by reason of overflow, unfit for cultivation, and only of use for the purpose of raising grass and hay upon them, the use of the lands for that purpose openly, and to the knowledge of the neighborhood, for the statutory period, is sufficient to constitute adverse possession under color of title.[1]

3. ESTOPPEL—EQUITABLE—PAYMENT OF TAXES.
    A mere payment of taxes by claimant in ejectment, with knowledge of defendant's claim of title to the land, will not estop defendant from asserting his claim of title, because he tacitly permitted complainant to pay the taxes, where defendant made no concealment of his title, which was matter of record.

4. SAME—PLEADING—BURDEN OF PROOF.
    To sustain a plea of estoppel, evidence in support of the facts claimed to give rise to the estoppel must be adduced by the party pleading it, for upon him is the burden of proof.

In Equity. Bill to quiet title.

*Hubbard, Clark & Dawley,* for complainant.

*T. W. Harrison* and *John F. Duncombe,* for defendant.

SHIRAS, J. This case is now before the court upon a rehearing granted on petition of complainant,[2] and the questions involved have been very

---

[1] Respecting the character of occupancy that will constitute adverse possession, see Roots v. Beck, (Ind.) 9 N. E. Rep. 698, and note, and Murray v. Hudson, (Mich.) 32 N. W. Rep. 889, and note.

[2] No opinion was filed when judgment was rendered on the original hearing.

fully argued by counsel. The subject of controversy is the ownership of the N. E. ¼ of section 28, township 95, range 32 W., situated in Palo Alto county, Iowa. Complainant's title is evidenced by a patent from the United States, issued November 2, 1863, based upon an entry made in the preceding July. Defendant's title is based upon the swamp-land grant of 1850, the evidence showing that, in 1860, these lands, with others, were duly selected by the agents of the state of Iowa, as swamp and overflowed lands, and the selection forwarded to the surveyor general's office, and on the twenty-seventh day of March, 1860, the surveyor general forwarded to the land-office at Fort Dodge a duly-certified list of swamp lands, including those in dispute; and, in obedience to the general instructions previously issued by the commissioner of the general land-office, each 40-acre tract included in this list was marked "Swp.," meaning swamp land, upon the township map in the land office at Fort Dodge, the object of this marking being to show that these lands were withdrawn from sale or entry. This selection and entry of these lands has never been canceled or set aside; nor does it appear that any contest thereof has been had before the land department or secretary of the interior. The lands granted to the state of Iowa by the swamp-land act were, by the state, granted to the counties in which they were situated, and on December 29, 1860, Palo Alto county deeded the lands in dispute, with others, to John M. Stockdale, of whom defendant purchased the same, the deed from Stockdale and wife to defendant being dated July 23, 1861. These deeds were both properly recorded in the records of Palo Alto county.

In August, 1883, the complainant filed the present bill, setting forth that he is the absolute owner in fee of the lands; that the same were not swamp or overflowed lands, within the meaning of the act of 1850, and the selection thereof as such was a fraud; that the same had been set aside and annulled, etc.

Upon the former hearing the court held that the land was overflowed land, within the meaning of the act of 1850; but without determining whether, in this proceeding, defendant could, upon the allegations of his cross-bill, have the patent to complainant set aside, a decree for defendant was ordered, on the ground that complainant was barred by the statute of limitations. Counsel for complainant now insist that the lands are not shown to be swamp lands, within the meaning of the act of congress of 1850. The act includes two kinds of land, swamp and overflowed. If, by reason of either swamp or overflow, the land is rendered unfit for cultivation, it comes within the purview of the act. What is the evidence on the question?

James Hickley testifies that he has known the land since 1857. "It is low bottom land, subject to overflow from the Des Moines river; have seen it overflowed from two to six feet deep. It lies in the corner of a big bend of the river, so that the water, when it overflows, passes over it. There is not to exceed ten acres that could be plowed on the whole half section; and the greater part of each 40-acre tract is subject to overflow from the Des Moines river, so that it can't be cultivated."

John M. Heffley testifies that "the north half of section 28, 95, 32, is wet, overflowed land from the Des Moines river, and there is not to exceed ten or twelve acres on the whole half section of dry land; and that is in little strips, here and there. It overflows from one to ten feet of water. I have seen it last from early spring to July and August. The natural growth on said bottom is coarse bottom hay."

Thomas Kirby testifies "that the north half of section 28 is overflowed land, and unfit for cultivation. All of it is liable to overflow, and most of it every year. One year I cut hay on the highest part of it, and lost it from overflow. If it did not overflow it would be so wet from the Des Moines river that it could not be cultivated. It generally overflows in the spring, and then the water goes down, so we cut hay in July, August, or September. It could not be cultivated in any crops of grain." Mulroney, Laughlin, Mahan, Booth, Tobin, and Shea all testified to the same facts.

Complainant does not introduce any testimony whatever to contradict the statements of these witnesses. The uncontradicted evidence, then, shows beyond question that, from 1857 to the present time, this land has been and is low bottom land, liable to overflow, sometimes once and sometimes oftener each year, and in some seasons it has been covered from early spring until August; and some years it has been so completely overflowed that not even a crop of wild hay could be saved from it, and that at no time since 1857 could the land, or any part, be cultivated for the raising of any kind of grain, corn, or the like thereon. No other conclusion can be possibly reached, under the evidence, than that the land is "overflowed," within the meaning of the term as used in the act of congress of 1850.

It was therefore rightfully selected by the state of Iowa, through the agency of the county, as part of the swamp lands to which the state was entitled; and when thus selected, and the list filed with the surveyor general, and by him approved and certified to the United States land-office at Fort Dodge, by whom the same was marked on the township map as swamp land, and therefore withdrawn from entry or sale, it would seem that, until such selection had been canceled or set aside in some proper manner, the land could not be legally entered by any one else. Whether the rights of the defendant under the title derived through the state from the swamp-land act were not sufficient in equity to overcome the title asserted by complainant was not discussed or decided in the original opinion, the decision being placed upon the conclusion arrived at on the plea of the statute of limitations. On behalf of complainant, it is now urged that the evidence fails to show that the defendant had such actual and open possession of the realty as is necessary to render available the plea of the statute, and in support of this view counsel have cited many extracts from a large number of cases.

The number of causes to be found in the reports in which courts have been called upon to determine what acts are or are not sufficient to establish the fact of open and actual possession, only serves to show that no fixed rule of universal application can be laid down. That which,

under one set of circumstances, and at one time, would satisfactorily prove the fact of open adverse possession, might be wholly insufficient under other circumstances. Regard must be had to the character of the land, the uses to which it can be put, its surroundings and a variety of other matters, having more or less weight according to circumstances. The acts relied on as showing actual possession must usually be such that, on the one hand, the fair inference is that they were done because the doer thereof claimed title or ownership in the premises; and, on the other hand, they must be such as would naturally lead any one interested in the land to understand that they were done by some one who was claiming title in the premises. And, furthermore, it will ordinarily be sufficient evidence of actual possession if the person claiming title puts the premises to the use which they are naturally fitted for; or, in other words, such a use as the actual owner would ordinarily put them to, when using them at all.

Thus, in *Ewing* v. *Burnet*, 11 Pet. 41, it is said that "it is well settled that, to constitute an adverse possession, there need not be a fence, building, or other improvements made. It suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for 21 years after an entry under claim and color of title. So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule adapted to all cases. * * * Neither actual occupation, cultivation, or residence are necessary to constitute actual possession, where the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim."

It will be borne in mind that in this case the defendant claimed title to the entire premises, under conveyances duly executed and properly recorded; so that there can be no question as to the extent or character of the claim of title relied upon by defendant. It is not a case in which the party is forced to rely upon his occupancy of the land as the evidence of the extent of his claim, but rather a case in which actual possession of part may be deemed to show occupancy of the entire tract.

As has already been said, the uncontradicted evidence in the case shows that the land in dispute is overflowed, wet land, wholly unfit for cultivation for any kind of crops, such as corn, wheat, oats, or the like, and only fit for use as grass land. The evidence no less clearly shows that, ever since the defendant purchased the land from Stockdale, in 1861, he has used the same for the only purpose for which it is fitted; that is, as grass land, and unless prevented by the overflowing water, the grass has each year been cut, the hay has been stacked upon the premises, and protected by a fence, and has been removed as needed, or as sold to third parties. From the acts of defendant, his neighbors knew that he was in possession of this land, and that he was asserting title thereto. The evidence is plenary on this point. If possession and actual occupancy is

not the fair inference from these facts, then it is difficult to see how actual occupancy can ever be taken of these premises. It is not to be supposed that the owner will build a house, or put fences on land which, as a rule, is overflowed every year from one to ten feet in depth, and which may be overflowed more than once each year, and on which the water sometimes remains from early spring until August. It is wholly unfit for cultivation, for the like reason, and hence it cannot be expected that the owner will plow it, or attempt to seed it down in grain of any kind. What use, then, can the owner put it to other than the very use to which it has been put for the last 25 years? It will not do to say that such use, thus continued year after year, has no significance, and would not be a warning to all that the person so doing claimed some right or title in the land. The entire neighborhood seem to have clearly understood the force and significance of these acts, for it is proven beyond all doubt that the neighbors understood that defendant claimed the ownership, and had possession of the land. The defendant did not in any manner seek to conceal his title or possession. The conveyances under which he claimed title were spread upon the records of the county; and his acts of ownership were openly exercised upon the land in the only way in which it could be done.

Under the evidence submitted in the case, no other fair conclusion can be reached than that since 1861 the defendant has openly asserted his title to these premises, and has used and occupied the same for just such purposes and in the manner in which it would be expected that the real owner would occupy the same. This being so, it must be held that the defendant has been in the open, adverse, and actual occupancy of the land since 1861, under color of title, and it is therefore too late for complainant to assert and maintain a right to possession, even though he holds a patent to the land. It is also urged in argument that the defendant is estopped from asserting any right to this land because he permitted complainant to pay the taxes on the same up to the year 1883. The defendant had not, as already said, concealed his claims to this land. He had placed upon the records of the county the conveyances under which he claimed the land, and these deeds, together with the selection of the land as swamp land, had all been made parts of the public records before the complainant made his entry or obtained a patent. The acts of ownership exercised by defendant were also open and above board. The complainant made claim to the title, and paid the taxes because of such claim. There is no evidence adduced showing that complainant was in any manner misled by defendant, either actively or passively. It is not shown by evidence that complainant did not know all about defendant's claim of title when he paid the taxes. The only evidence adduced by complainant is the patent and tax receipts. He did not testify in the case, and certainly the court cannot assume that he was ignorant of facts which were well known in the neighborhood. Certainly, before any shadow of claim by way of estoppel can be made out, it must appear that complainant paid the taxes in ignorance of the rights of defendant. If he paid the taxes, knowing that defendant made claim to

the land, then certainly he cannot complain. So, also, it is not shown that Tobin knew by whom the taxes were paid.

The burden of proving the facts upon which the plea of estoppel is based was upon complainant, and he has not seen fit to offer any testimony whatever, but rests his case simply upon proof of the issuance of a patent, and payment of the taxes. To sustain the plea of estoppel, evidence in support of the alleged facts should have been given, if any such exists. None is found in the record, and therefore there is no foundation upon which an argument can be based in support of the plea of estoppel.

The case is simply reduced to this: that, in 1861, the defendant took a conveyance to the land from John M. Stockdale and wife, under what then seemed to be a good title, and has since used and occupied the premises for the only purpose for which the same are fitted, and has exercised such acts of ownership over the same, that all people living in the neighborhood have known that he claimed the lands, and occupied the same as his own.

In 1863 the complainant procured a patent for the lands from the United States, and has paid taxes thereon down to the year 1882; and in August, 1883, he filed the present bill, which, in effect, asks that the defendant be deprived of the possession of the lands, after he has used and occupied the same openly as his own for a period of 22 years, claiming title under public acts and deeds of conveyance that were a part of the public records before the complainant procured his patent to the land.

The defendant, among other matters, pleads the lapse of time and adverse possession as a defense; the evidence sustains the plea; and the decree, therefore, ordered at the first hearing, must be upheld, and it is so ordered.

BREWER, J. I concur in the above.