GRIER et al. v. UNION NAT. LIFE INS. CO.

(District Court, E. D. Pennsylvania. August 28, 1914.)

No. 423.

1. CORPORATIONS (§ 215*)—STOCKHOLDERS—LIABILITY FOR CORPORATE DEBTS.
Except where elements of estoppel supervene, the general rule is that a shareholder is not liable to creditors upon insolvency of the corporation, unless the circumstances are such that he would have been liable to the corporation itself.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 826–828, 845–848, 852, 854; Dec. Dig. § 215.*]

2. CORPORATIONS (§ 170*) — WHO ARE SHAREHOLDERS — ENTRY OF NAME ON BOOKS.
One is not bound as a stockholder of a corporation merely because his name has been entered on its books as a stockholder, unless in some manner, either expressly or impliedly, he consented to such entry.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. § 170.*]

3. INSURANCE (§ 50*)—INSOLVENCY OF INSURANCE COMPANY—STOCKHOLDERS—CONDITIONAL SUBSCRIPTION—ENFORCEMENT.
Defendant insurance company, in order to conduct the business for which it was organized under the laws of Pennsylvania, was required to obtain a capital of $300,000, and to that end issued and sold stock, some of which was bought by claimants, who were each given an agreement that the money paid should be retained in a special fund and returned unless the full amount was subscribed and paid in within 60 days. It was not kept in such special deposit, but was mingled with other funds of defendant, for which a receiver was appointed within a few days; only a small part of the required sum having been subscribed. Certificates of stock were issued to claimants and retained by them. The money they paid could for the most part be traced and identified. It was not shown that defendant had contracted debts on the strength of the subscriptions, or that claimants had acted or represented themselves as stockholders. *Held*, that the fact that they had not returned their certificates before the commencement of the suit, the 60 days not having expired, did not create an estoppel, but that the agreements under which they subscribed were valid and enforceable against the receiver.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 8, 58–61; Dec. Dig. § 50.*]

In Equity. Suit by one Grier and others against the Union National Life Insurance Company. On exceptions to report of special master. Exceptions sustained.

See, also, 217 Fed. 293.

Charles D. McAvoy, of Norristown, Pa., and W. W. Mentzinger, Jr., and Henry T. Williams, both of Philadelphia, Pa., for exceptants.

Garrett A. Brownback, Thomas J. Norris, and Owen J. Roberts, all of Philadelphia, Pa., opposed.

THOMPSON, District Judge. The exceptions are based upon the disallowance by the special master of the claims of subscribers to the capital stock of the Union National Life Insurance Company to recover from funds in the hands of the receiver of the company the sums paid by them upon subscriptions to its stock under the following circumstances:

The company was organized and doing business under the laws of Pennsylvania, and on or about February 26, 1910, in an effort to raise $300,000 deemed necessary for purposes of capitalization to enable the company to continue in business in conformity with the requirements of the insurance commissioner of the state of Pennsylvania, authorized its agents to solicit subscriptions to shares of its capital stock at $125 per share. Of this amount the par of, the stock, to wit, $100, was to be placed in a special capital stock fund, and there held intact, and the remaining $25 per share was to be charged to a "contingent fund," and was to go to the company and its agents for commissions and expenses. Between February 26 and 28, 1910, the exceptants subscribed and paid for the par value of stock to the total amount of $6,475. Within a day or two thereafter each of the subscribers received from the company an agreement in the form of a letter as follows:

"This is to certify that the proceeds on subscriptions given by you for stock of the Union National Life Insurance Company, up to the full par value of the same, will be placed in the special capital stock fund and held there intact, until the full three hundred thousand dollars ($300,000), authorized by the board of directors of this company, shall have been subscribed and paid in for capital stock, after which time it will be transferred to the stock account. The capital stock of this company like that of any other company, insurance or banking, is a 'guaranty fund' and will always remain intact. The surplus funds of the company are the only funds for development or organization work. It is hereby specifically understood and agreed that should the full amount of the capital stock, as authorized by the board of directors, not be subscribed within sixty (60) days from this date, that all subscriptions for said capital stock, taken subsequent to February 26, 1910, will be returned to the subscribers.

"Union National Life Insurance Company.

[Signed]   W. E. A. Wheeler, President.

"[Corporate Seal.]          [Signed]   Edgar C. Van Dyke, Treasurer.

"Attest: W. C. Van Dyke, Ass't Secretary."

The letter set forth substantially the terms of an agreement made contemporaneously by the company's agents when the subscriptions were made.

Between the time of the subscriptions and March 1, 1910, inclusive, all the subscribers received certificates for the number of, shares covered by their several subscriptions, and the certificates of stock so received were retained by them. The money paid upon the subscriptions was not deposited in a special capital stock fund in accordance with the agreement, but was mingled with other funds of the company. On March 12, 1910, the bill in this case was filed by the holders of certain profit-sharing certificates issued by the company, alleging inter alia gross fraud and misrepresentation, and praying that a receiver be appointed to take charge of the assets of the corporation until further order of the court. On March 31, 1910, a receiver was appointed, "with instructions to take possession of the defendant company's property of every description and hold it until further notice." The total amount of the $300,000 authorized stock issue was not sold or subscribed within 60 days of the dates of, the exceptants' subscriptions, and it does not appear that any part of it, except to the extent of $7,225, was ever obtained. The special master finds, as a conclusion of law, that the money paid upon subscriptions, made in reliance upon the so-

called contingent agreements, constituted, as between the insurance company and the subscribers, a trust fund which could be followed and claimed as long as it could be traced and identified. He finds as a fact that the fund has been sufficiently traced and identified, except that, in the case of George B. Moore, but $350 of $500 paid by him could be traced and identified. To this finding of fact there is no exception by any party in interest. The special master further finds that inasmuch as the several subscribers subscribed for the stock of the corporation and received certificates of stock which they retained in their possession without objection to the company, and as they appeared as stockholders of record, and the company continued to do business and incurred liabilities up to the time of the appointment of the receiver, they are to be deemed stockholders, whose rights must be postponed to the rights of the creditors of the company. The position of the claimants and of the receiver representing the creditors, as stated in the special master's report, is as follows:

"On the one hand, it has been contended that the funds derived from the contingent subscriptions constituted a trust fund; that this trust fund has been followed and identified; that this fund belongs to the claimants; that the corporation had merely the legal title, but not the equitable or beneficial ownership, and, the conditions governing the subscriptions never having been fulfilled, this fund, even after the appointment of the receiver, may be reclaimed as against creditors of the corporation; that one does not become a stockholder merely by receiving and failing to return a stock certificate; that one cannot be made a stockholder without his consent or the intention appearing; that the agreement plainly indicates the intention of the parties that the proceeds of the subscriptions should not become corporate funds until after the expiration of 60 days, and obtaining subscriptions to the full amount of $300,000; that the subscribers could not be deemed stockholders until the money became the money of the corporation; that, as the conditions precedent were never fulfilled, the subscribers never acquired either the rights or liabilities of stockholders; that their subscriptions were in aid, not in fraud, of creditors; that it does not appear that any obligations were incurred on the strength of such subscriptions; that the obligations in fact incurred subsequent to such subscriptions were inconsiderable in amount; and that such subscribers might reasonably presume, inasmuch as they constituted an entire class and not individual, isolated cases, that the conditions of their subscriptions would be part of the record of the issue of the stock. On the other hand, it has been urged that while in the absence of insolvency, or proceedings practically amounting to a winding up of a corporation, the special agreement was enforceable against the corporation, the situation is changed by the intervening receivership; that the subscribers were stockholders of record without condition; that there was nothing on the books to differentiate them from ordinary stockholders; that they subscribed to stock and received stock; that they had all the rights of stockholders, and must be deemed to have all the liabilities; that, by accepting certificates of stock, they acquiesced in the position of the company in making them stockholders; that their opportunity to rescind ended with the appointment of the receiver."

Under the conditional subscription to the stock of the company, as evidenced by the agreement between the company and the subscribers, it is clear that, as between the subscribers and the corporation, the amounts paid by them could not be withheld from them by the company, unless the condition, upon which the subscription was based, had been fulfilled. The relation of subscribers to the stock of a corporation is one of contract, and their rights and liabilities are determined by their contract with the corporation. When they subscribed and paid

for the stock, the agreement was that the amounts of their subscriptions should be held in a special deposit and returned, unless the full amount of $300,000 was subscribed and paid. Under the contract, the purpose of the subscribers was that they should hold stock in the company after the $300,000 had been subscribed and paid in as capital which would enable the corporation to continue to carry on its business under the ruling of the insurance commissioner of Pennsylvania. They surely never intended, and it is impossible to conceive, that they would intend to pay for stock in a corporation which could not carry on the business for which it was incorporated. As between the corporation and the subscribers, the special master finds that the money could not have been withheld, and that, inasmuch as it can be traced and identified, it cannot be withheld by the receiver, unless the rights of creditors have in some way intervened, and the subscribers, having become owners of the stock, are in some manner estopped from claiming repayment of the amounts paid for it.

[1] Except where elements of estoppel supervene, the general rule is that the shareholder is not liable to creditors upon insolvency of the corporation, unless the circumstances are such that he would have been liable to the corporation itself. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Hahn's Appeal (Pa.) 7 Atl. 482.

In order to sustain the conclusion of the special master, therefore, it is necessary that facts appear which estop the subscribers to deny that they had in fact become stockholders, and that the money which they had paid for the stock was the money of the corporation. The ground of estoppel found by the special master consists alone in the retaining by the subscribers of the stock certificates, and making no claim for return of the money and no offer to return the certificates during the period between the time of their receipt by the several subscribers and the time when the bill was filed or the time when the receiver was appointed. That there was actual misrepresentation on the part of the subscribers is not even suggested. There is, moreover, no evidence to show that the subscribers had knowledge between the time of the receipt of the certificates and the appointment of the receiver that the remainder of the $300,000 had not been secured from other subscribers. It is difficult to see why, being ignorant of the status of the transaction, it was their duty to surrender their certificates and demand a return of their money. There is no evidence to show that any liabilities were incurred by the corporation, in the creation of which the creditors relied upon the fact that the several sums had been received upon subscriptions of the exceptants to the stock. The learned special master bases his conclusions upon the fact that, the certificates having been issued and delivered to the subscribers, they became stockholders "of record."

[2] Even if the subscribers' names were entered upon the books of the company as stockholders, they must in some manner, either expressly or impliedly, have consented to the entry in order to be bound by it. Sigua Iron Co. v. Greene, 104 Fed. 854, 44 C. C. A. 221.

[3] There is nothing to show their consent to become stockholders in a corporation which, under the rulings of the insurance department of Pennsylvania, could not go on with its business without a capital of

$300,000, when only $7,225 of that amount had been subscribed, except that, having received the certificates, they did not immediately return them.    While, as stated by the special master, the subscribers might have exercised the rights of stockholders, it is not shown that they did exercise, or attempt or claim to exercise, any such rights.    If having received the certificates of stock, although, without demand upon their part, they had retained those certificates throughout a period during which the company was actively carrying on business, had exercised any rights thereunder, had appeared at the meetings of the stockholders, or had received dividends, a different situation would arise. The conditions upon which the certificates were issued are not shown to have been secret conditions, but must be assumed, as stated in the agreement, to have been properly authorized by the board of directors, and therefore a part of the "record" as to the stock.    Sixty days were to be allowed the company to fulfill the conditions of the subscription. But 12 days had elapsed when the bill was filed, and 30 when the receiver was appointed.    If, at the end of the 60 days, the subscribers had retained the stock without inquiry as to whether the balance of the $300,000 had been subscribed, it might constitute conduct indicating an intention to retain the stock, or the failure to act at the end of the 60 days might have estopped them as against the creditors, who became such relying upon the subscriptions.    The bill for the appointment of the receiver followed so closely upon the receipt of the certificates of stock, and the appointment of the receiver so closely thereafter, that it would be unreasonable to hold, without proof that the subscribers knew that the conditions had not been fulfilled, that they must be deemed to have voluntarily retained their certificates and become stockholders merely because within that short time they had failed to act.    There is nothing in the record to show that the rights of any creditor rise higher than the rights of these subscribers.    If there were liabilities created after the names of the subscribers were placed upon the company's books upon the faith of their appearing there, it is incumbent, upon those alleging the estoppel, to establish it by clear and satisfactory evidence.    Merrill v. Tobin (C. C.) 30 Fed. 738.

In the case of Newton National Bank v. Newbegin, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727, it was held that a subscriber for stock of a national bank, who had paid for shares of a proposed increase in its capital stock upon fraudulent representations of the cashier, could recover the money paid by him under those circumstances, even where insolvency of the bank occurred before action was taken by him.    In that case Thayer, C. J., in delivering the opinion of the court, said:

"If a considerable period of time has elapsed since the subscription was made, if the subscriber has actively participated in the management of the affairs of the corporation, if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud or in taking steps to rescind when the fraud was discovered, and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid, in all of those cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent.    But if none of these conditions exist, and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern."

In the present case, while the right to recover is not based upon fraud but upon the ground that the condition upon which the subscription was made had not been fulfilled, the principles of estoppel are the same. There was no considerable lapse of time after the subscription was paid and the stock received before the receivership to indicate that there was want of diligence on the part of the subscribers to take steps to deny their status as stockholders. There was no participation in the management of the affairs of the corporation. There is no evidence of any indebtedness having been created, based upon the subscriptions. This being so, the elements of estoppel do not exist in this case.

As was stated by Mr. Justice Field in Henshaw v. Bissell, 85 U. S. (18 Wall.) 255, at page 271 (21 L. Ed. 835):

"An estoppel in pais is sometimes said to be a moral question. Certain it is that to the enforcement of an estoppel of this character, such as will prevent a party from asserting his legal rights to property, there must generally be some degree of turpitude in his conduct which has misled others to their injury. Conduct or declarations founded upon ignorance of one's rights have no such ingredient, and seldom work any such result. There are cases, it is true, where declarations may be made under such peculiar circumstances that the party will be estopped from denying any knowledge of his rights; but these are exceptional, and do not affect the correctness of the general rule as stated."

See, also, Commonwealth v. Moltz, 10 Pa. 527, 51 Am. Dec. 499.

Without evidence of any creditor having been misled to his injury by the conduct of the exceptants, it would work a manifest injustice to hold that the money paid by them should be distributed to creditors because they failed to assert their claims while in ignorance of their status under the conditional subscriptions and before the period for carrying out the conditions had expired.

The fourth, fifth, sixth, and seventh exceptions upon the part of Foster C. Moore, Benjamin Erickson, Mary F. Dyer, and George B. Moore are sustained. As to the first, second, and third exceptions, they were not urged at the argument and do not appear to be material to the disposition of the case; neither is any error pointed out in the findings of fact covered by these exceptions. They are therefore dismissed.

The fourth, fifth, sixth, and seventh exceptions upon the part of William S. Schlichter, Elmer E. Althouse, and James C. O'Donnell are sustained, and the first, second, and third exceptions, which are similar to the first, second, and third filed on behalf of Moore and others, are dismissed for the same reason.