Appeal of **MIDDLETON COMPRESS & WAREHOUSE CO.**      **Docket No. 1125.**

A depreciation rate of 4 per cent upon the cost of a combination warehouse and wharf and of 10 per cent upon the cost of an extension of the wharf into deep water, *held* to be a reasonable allowance for exhaustion, wear and tear.

Money actually paid in to the treasury of the corporation with the express understanding that the amount is to be considered in the nature of an increase in the capital of the company, *held* to be a part of the company's invested capital from the date paid in, although certificates of stock representing the same are not actually issued until a later date.

Submitted March 25, 1925; decided May 20, 1925.

*E. Willoughby Middleton, Esq.*, for the taxpayer.

*Ellis W. Manning, Esq.*, for the Commissioner.

Before JAMES, PHILLIPS, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves income and profits taxes for the fiscal years ended June 30, 1919, and June 30, 1920, in the amounts of $4,446.65 and $618.11, respectively. From the evidence submitted the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a corporation organized and doing business under the laws of South Carolina, with its place of business at Charleston, in said State.

It is engaged in the business of compressing cotton and concentrating it for the purpose of export. To carry on its business it owns and maintains a certain warehouse and wharf.

The original part of this plant was constructed in 1917 and stands partly upon high land and partly upon concrete piers and pile construction in low water, and is subdivided by four brick walls for fire protection. The cost of this part of the plant was $54,551.18, and upon this portion of the property the Commissioner has allowed a depreciation rate of 4 per cent. In 1919 an extension of this property was begun, to be made into deep water and completed in the year 1920. The total cost of the extension, when completed in 1920, was $39,060.16. Upon this portion of the property the Commissioner has allowed a depreciation rate of 10 per cent. The entire construction, excepting the brick fire walls, is composed of wood, and that portion of it which extends over water is supported by concrete piers and piles, some of which are creosoted and some of which have a concrete surface above the low-water line. About three-fourths of the entire construction rests on piles which are exposed to the action of the tides and salt water.

The taxpayer claims a rate of depreciation of 10 per cent upon the cost of the entire property.

The taxpayer corporation is a creature of, and is entirely owned by, Charles F. Middleton, Charles F. Middleton, jr., George Abbott Middleton, and the Middleton Company. The latter is a partnership composed of the three Middletons first named, and the Middleton Company furnishes the financial support for all the operations of the taxpayer corporation.

In 1919 it was determined that the taxpayer corporation should extend the plant for carrying on its business by acquiring a piece of property adjoining its then existing plant, and this property could be procured at a cost of $60,000. On November 3, 1919, Middleton & Company paid the purchase price of this property with its check, with the understanding of all parties in interest that the amount of this payment should be considered as a subscription to an additional amount of the capital stock of the taxpayer corporation. On November 4, the directors of the taxpayer corporation agreed to hold a meeting for the purpose of considering an increase of its capital stock, and on November 5, at a duly called meeting of the directors, a resolution was adopted authorizing and directing the proper officers to take the necessary steps to procure legal authority to issue additional shares. Such steps as were required by the laws of the State of South Carolina were immediately taken and consummated at the earliest date practicable, and in December, 1919, after having amended its articles of incorporation and thus secured authority to issue additional stock, certificates representing the payment of $60,000 were duly issued to Middleton & Company on December 16, 1919.

From the time of the organization of the taxpayer company there was carried upon its books a debit and credit account with Middleton

& Company. When the $60,000 was paid by Middleton & Company it was evidenced by a credit entry in the book of the taxpayer, and when the stock was actually issued the same amount was debited to the account.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final decision will be settled on consent or on fifteen days' notice, pursuant to Rule 50.

### OPINION.

TRUSSELL: The controversy over the amount of depreciation which this taxpayer should be allowed as a deduction from gross income for the years 1919 and 1920 apparently arises from the fact that the company's own books of account separate its depreciable properties into two parts, the original construction being carried on the books as a " construction " account, while the extension into deep water is carried as a " wharf " account; and the taxpayer claims that the estimated life of the entire property should be treated as a unit and should be considered as not to exceed 10 years. It appears, however, from the testimony taken at the hearing that the original structure which was built in the year 1917, is now, in 1925, approximately eight years after its construction, still in good condition; is performing the same service to the company as it originally performed, and, so far as can be determined from the evidence, is good for practical use for some years to come. The claim of a 10 per cent depreciation upon the original construction, therefore, does not seem to be well founded. We are thus led to the conclusion that the rates of 4 per cent upon the original construction and 10 per cent upon the new construction over deep water, together produces a fair rate of depreciation and a reasonable allowance for exhaustion as applied to the entire property, and the Commissioner's decision in reference to this issue should be approved.

The evidence furnished in this hearing shows conclusively that when, on or about November 3, 1919, the taxpayer planned to increase its plant, and Middleton & Company advanced the funds for the purpose of purchasing the property desired to be acquired, it was understood and agreed by all parties in interest that the funds so advanced should be an addition to the capital of the taxpayer company, and that immediately thereafter the necessary steps were taken which authorized the issuance of additional capital stock. Such steps were carried to completion at the earliest practicable date and, when proper authority to issue additional stock was procured, stock certificates evidencing the payments of $60,000 were duly issued.

It was clearly the purpose of the framers of the Revenue Act of 1918 to provide that all moneys actually paid in to a corporation as a contribution toward the capital of such corporation should be treated as invested capital from the time paid in, and the record of this appeal shows that the $60,000 was paid in on the third day of November, 1919. We are, therefore, of the opinion that it must be treated as an addition to the invested capital of the company on that date.