BRIDGEPORT HYDRAULIC COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43322. Filed April 30, 1954.

*Rollin Browne, Esq., Milton D. Solomon, Esq.,* and *Philo C. Calhoun, Esq.,* for the petitioner.

*Joseph Landis, Esq.,* for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $186,293.21 in the excess profits tax of the petitioner for 1945. The issues for decision are (1) whether the unamortized discount upon issued and the premium paid upon retirement in 1945 of the petitioner's series H, I, and J bonds are deductible in full in 1945 or

should be amortized over the life of the new series K bonds issued in 1945; (2) whether the cost of a refunding in 1939 which was allowed to be deducted in that year should be included in the amount which should either be deducted in 1945 or amortized over the remaining life of the series K bonds; and (3) whether money received by the petitioner in December 1939 as subscriptions for new stock which was to be issued in but could not be issued before January 1940, constituted "money paid in for stock" in 1940 within the meaning of section 713 (g) (3) of the Internal Revenue Code. The facts have been presented by stipulations which are adopted as the findings of fact.

The petitioner, a Connecticut corporation, filed its excess profits tax return for 1945 with the collector of internal revenue for the district of Connecticut. It kept its books and filed its returns on an accrual method of accounting.

Each series of bonds involved herein was issued pursuant to a supplement to an original mortgage given by the petitioner under date of June 1, 1924.

$6,961,000 face amount of the petitioner's bonds, series H, I, and J, was outstanding in the latter part of 1945 in the hands of 3 insurance companies.

The series H bonds were dated August 1, 1938, were to mature on August 1, 1968, and bore interest at the rate of 3¼ per cent. The series I bonds were dated July 1, 1939, were to mature on July 1, 1974, and bore interest at the rate of 3⅜ per cent. The series J bonds were dated June 15, 1940, were to mature on June 15, 1970, and bore interest at the rate of 3 per cent.

Lee Higginson Corporation (hereafter called Higginson) conferred with the petitioner in 1945 on the subject of refunding the outstanding bonds of the petitioner, and, after various preliminary plans had been rejected for one reason or another, the petitioner decided to call all of its outstanding series H, I, and J bonds for redemption and to sell its new series K bonds in the face amount of $6,961,000 for cash. Higginson, upon learning of that decision, communicated with the 3 insurance companies which held all of the outstanding bonds and they agreed to purchase the series K bonds of the petitioner on the terms of the petitioner's offer. The series H, I, and J bonds were called and redeemed as of December 20, 1945. The holders of the called bonds were paid in cash, most of which was borrowed by the petitioner from Higginson for the purpose and the balance of which was furnished by the petitioner.

The 3 insurance companies, pursuant to purchase agreements entered into with the petitioner on November 14, 1945, purchased all of the series K bonds and paid for them with their checks. The

series K bonds were dated November 1, 1945, were to mature on November 1, 1980, and bore interest at the rate of 3 per cent.

The petitioner paid a premium to retire the series H, I, and J bonds, it issued the series K bonds at a premium, and also was paid for accrued interest up to December 20, 1945, by the purchasers.

The Commissioner in determining the deficiency for 1945 explained:

> The amount of $173,737.47 claimed in your returns for the calendar year 1945 as a loss upon redemption of Series H, I and J Bonds, which were replaced with Series K Bonds issued concurrently to the same bondholders in equivalent face values, is disallowed as not deductible under any provision of section 23 of the Internal Revenue Code. It has been determined that the amount of $173,737.47 should be applied against the income amount of $336,431.95 acquired upon issuance of the Series K Bonds and the net difference of $162,694.48 reported ratably over the period December 20, 1945, to November 1, 1980, the life period of the new bonds.

The petitioner, as the Commissioner concedes, is entitled to recover tax free the amount here in controversy. The only question is whether it is all deductible in 1945 in connection with the retirement of the old bonds or whether it is to be carried over as a part of the cost of the issuance of the new bonds. The Commissioner summarizes his position on this issue as follows:

> Respondent maintains that the 1945 bond refunding transaction, though cast in the form of a redemption of the old bonds for cash and a sale of the new bonds for cash, was in substance an exchange of the new bonds for the old, so that the difference between price at which the old bonds were called and the proceeds received on their original sale minus the amount of issue premium theretofore included in income became part of the cost of issuing the new bonds; and such cost is not deductible, in full in 1945, but is to be amortized over the life of the new bonds.

There is no sufficient justification in the stipulated facts for regarding the substance of the 1945 transaction as being any different from its form. The petitioner did what it had a right to do. It unqualifiedly called the old bonds and paid off that indebtedness in cash. Separately it sold the new bonds for cash. The Commissioner cites and relies upon *Great Western Power Co. of California* v. *Commissioner*, 297 U. S. 543. That case is distinguishable because not only was there an exchange of new bonds for old but it was pursuant to rights granted in the mortgage securing the old bonds. The Commissioner also cites *South Carolina Continental Telephone Co.*, 10 T. C. 164, in which it was found as a fact that there had been an exchange of the new bonds for the old and that was pursuant to an agreement between the debtor and the holders of the old bonds, so that case is likewise distinguishable from the present case.

Here the petitioner decided to call its old bonds independently of and prior to the contracts for the sale of, its series K bonds. It happens that each purchaser of new bonds had owned a like face

amount of the old bonds but there is no particular significance in that fact. Those 3 insurance companies signified their willingness to buy the new bonds on the petitioner's terms and that willingness simplified the sale of the new bonds but it had no effect upon the retirement of the old bonds. Higginson had contacted other possible purchasers, but when it found that these 3 were interested, it thereafter dealt with them alone. The Commissioner has failed to demonstrate why that circumstance or any other here present requires that the 2 separate transactions be regarded as an exchange of the new bonds for the old. He cites no case holding that the cost of retiring old bonds, including the premium paid for their retirement and unamortized costs of issuance, must be regarded as a cost of issuing the new bonds recoverable over the life of those new bonds. Those items are deductible in the year in which the old bonds were retired. *Congress Square Hotel Co.*, 4 T. C. 775; *Helvering* v. *California Oregon Power Co.*, 75 F. 2d 644. Cf. *Commissioner* v. *Coastwise Transportation Co.*, 62 F. 2d 332, 71 F. 2d 104.

An alternative argument made by the petitioner with respect to the retirement in 1938 of the series E and F bonds need not be decided in view of the above holding.

The petitioner retired its series G bonds in 1939 at the same time that it issued its new series I bonds. The premium at which the series G bonds were retired, less the unamortized premium at which they had been issued, amounted to $156,931.82 which the petitioner claimed and was allowed as a deduction on its 1939 return. The petitioner contends that under the decision of this Court in *South Carolina Continental Telephone Co.*, *supra*, that amount constituted a part of the cost of issuing the series I bonds, should not have been deducted in 1939 as the cost of retiring the series G bonds, should have been recovered by deductions for amortization over the life of the series I bonds, and $127,919.71, the remaining unamortized part of that cost of issuing the series I bonds, is deductible in 1945 as a part of the cost of retiring the series I bonds. It suggests that if this represents a change of position on its part, the Commissioner will have to look to section 3801 of the Internal Revenue Code to correct the error. The petitioner argues that the *South Carolina* case was incorrectly decided but that it is entitled to this deduction for 1945 if the Tax Court adheres to its decision in that case. The Commissioner does not argue that the case was incorrectly decided but concedes that the unamortized cost of issuing the series G bonds and the cost of redeeming them was erroneously deducted and allowed on the petitioner's return for 1939 and those amounts should have been added to the cost of the series I bonds and recovered through deductions for amortization over the life of that series.

The petitioner issued $4,971,000 face amount of its series G bonds under its Eighth Supplemental Mortgage. They were dated July 15, 1936, were to mature on July 15, 1971, and bore interest at 3½ per cent. $100,000 face amount of those bonds was sold to one insurance company and the balance was sold to another. Higginson suggested to the petitioner in May 1939 that it issue series I bonds in exchange for the series G bonds then outstanding. The petitioner and the insurance companies entered into agreements dated May 19, 1939, to the effect that on July 1, 1939, the petitioner would issue and the insurance companies would purchase the series I bonds at 108⅛ and the petitioner would use the proceeds from the sale of those bonds to refund the outstanding series G bonds at the call price of 107, plus accrued interest, on that same day upon surrender of those bonds by the insurance companies. Actually the series I bonds were exchanged directly for the series G bonds and the petitioner gave its checks to the insurance companies for the excess of the amount which it owed to retire the series G bonds over the purchase price which it was entitled to receive from the series I bonds, after which the series G bonds were canceled. The facts present a situation which is not distinguishable from that which existed in *South Carolina Continental Telephone Co.*, *supra*, and, upon authority of that case, it is held that the stipulated amount of $127,919.71 is deductible in 1945 as a part of the cost of retiring the series I bonds.

The board of directors of the petitioner determined in June 1939 to issue some additional authorized common stock by offering it pro rata to stockholders of record at a fixed price. The petitioner sent a letter on December 5, 1939, to its stockholders of record as of December 1, 1939, enclosing warrants and fractional warrants which entitled the holder to subscribe for the issue of stock. The warrants were to expire if not exercised on or before January 2, 1940, after which the petitioner could sell the unexercised warrants to others. The stock being subscribed for by exercise of the warrants was not to be issued until January 15, 1940. The petitioner received subscription warrants together with cash in the amount of $501,020 during December 1939 in full payment of the subscription price of the shares subscribed for under those particular warrants. The petitioner issued receipts in 1939 for that cash but did not issue certificates for any of the shares until January 15, 1940, when all of the subscriptions and payments for the shares to be issued had been received. The petitioner retained the subscription money in a separate bank account and did not withdraw any of it until after the first week in January 1940. The Commissioner, in determining the deficiency, held that the $501,020 received on the subscriptions during December 1939 did not qualify under section 713 (g) (3) as money paid in for stock "after the be-

ginning of the taxpayer's first taxable year under this subchapter." This same issue between the same parties but involving other taxable years was decided in favor of the petitioner in *Bridgeport Hydraulic Co.* v. *Kraemer*, 119 F. Supp. 924. The issue is now res judicata. Furthermore, this Court agrees with the decision reached in that case.

*Decision will be entered under Rule 50.*