BRIDGEPORT HYDRAULIC COM-
PANY, Plaintiff-Appellee,

v.

Frank W. KRAEMER and John J. Fitz-
patrick, Collectors of Internal Revenue
for the District of Connecticut, Defend-
ants-Appellants.

No. 119, Docket 23195.

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1954.

Decided Feb. 21, 1955.

H. Brian Holland, Dept. of Justice, Washington, D. C., Davis W. Morton, Jr., Ellis N. Slack, Hilbert P. Zarky, Sp. Assts. to Atty. Gen., Simon S. Cohen, U. S. Atty., Hartford, Conn., for appellant.

Marsh, Day & Calhoun, Bridgeport, Conn., Rollin Browne, New York City, Philo C. Calhoun, Bridgeport, Conn., Hugh Satterlee, New York City, for appellee, Satterlee & Browne, New York City, of counsel.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action against tax collectors, brought by a corporation to recover excess profits taxes alleged to have been unlawfully collected. The plaintiff was organized in Connecticut; its first taxable year under the statute was 1940 and it filed excess profits tax returns for 1941, 1942 and 1943, in all of which it claimed as a "capital addition" the sum of $651,284.32, of which the Commissioner disallowed $501,020, on the ground that the plaintiff had received that much of the total amount before January 1, 1940, and that it was therefore not "money * * * paid in for stock" in

the year 1940.[1] Judge Hincks's opinion[2] states the facts in detail and we shall assume an acquaintance with it in what we have to say.

Apparently in the district court the only issue mooted was, or at any rate Judge Hincks was led to believe that it was, whether the law of Connecticut made the new subscribers stockholders before they became entitled to their certificates. On the appeal the defendants do not so confine themselves and we shall not; on the contrary we shall consider what is the proper meaning of the phrase in the statute:[3] "money * * * paid in for stock * * * or as a contribution to capital." There may be occasions when a corporation offers a new issue of shares on the understanding that the whole issue need not be subscribed but that it will issue so much of it as may be taken up. Such instances must be very rare, and in any event that was not the situation in the case at bar. The approval of the Connecticut Public Utility Commission was necessary to the validity of the issue; and the plaintiff's application, as well as the Commission's "approval," were both made conditional upon the whole 25,000 shares being taken up at $26. Indeed, that was a necessary inference from the situation as a whole. The plaintiff, a water company, wished to add new reservoir capacity to what it already had, and it proposed to raise the money, half by new bonds, half by new shares. Its charter forbad it to issue bonds for more than its outstanding shares, so that it had to get subscriptions for all the shares at the prescribed price in order to float the bonds; and it had to float the bonds, as well as issue the shares, in order to build the new reservoir whose construction the Commission had made the condition of its

"approval." It was no doubt on this account that throughout December, the corporation kept the money it received in a separate account. True, that would not of itself have limited its use, if it had been otherwise free to use it; but it did show its understanding that the money was not available assets in its treasury; and there can be no doubt that if it had failed to secure all the necessary subscriptions, it would have been liable for a return of whatever it had received.

■■ We do not suppose that the defendants would maintain that if the plaintiff held the subscriptions on an express trust, they would have been "money paid in for stock"; indeed, if that had been true, the shareholders would have had a priority in insolvency.[4] The argument appears to be that, though the plaintiff would have been liable for a return of the amount received had the whole issue not been subscribed, it was free to use the money as "capital" as it came in. Except for certain decisions of the Board of Tax Appeals under the old Act,[5] we should have no doubt that such payments are not to be deemed "money * * * paid in for stock," or "contribution to capital" as those words appear in § 713 (g) (3), regardless of whether they are held in trust or not. When a corporation incurs a corresponding liability in case the condition is not fulfilled on which it receives subscriptions to shares, the payments are not like assets of which it has the untrammelled control without liability. Capital in the conventional sense means assets, the claims for which are junior to the claims of creditors, and such subscriptions do not take on that character until they are free from the possibility that the corporation may be obliged to give them a preferred position. It would in our judgment altogether fals-

1. § 713(g) (3) of the Revenue Act of 1939, 26 U.S.C.A. § 713(g) (3).

2. D.C., 119 F.Supp. 924.

3. § 713(g) (3), Internal Revenue Code of 1939, 26 U.S.C.A. § 713(g) (3).

4. Grier v. Union National Life Insurance Co., 3 Cir., 217 F. 287.

5. Middleton Compress & Warehouse Co. v. Commissioner, 1 B.T.A. 1145; Manville Jenckes Co. v. Commissioner, 4 B.T.A. 765, 784–786; Corning Glass Works v. Commissioner, 9 B.T.A. 771, 790.

ify the underlying theory of the Act to treat them as capital assets regardless of this change in their place in the financial hierarchy. Indeed, the Tax Court has taken that position as to these very subscriptions [6]; for, not only did it accept Judge Hincks's decision as authoritative, but it went out of its way to say that it agreed with him on the merits.

It is true, however, that in the decisions of the Board that we have cited it did hold that subscriptions became capital on their receipt, although there was a condition attached to the issue of shares that had not then been fulfilled. Indeed, in Manville Jenckes Co. v. Commissioner, supra, 4 B.T.A. 765, the corporation had issued notes that were to remain outstanding until the corporation got legislative leave to issue shares; yet the Board held that the funds became capital at once. The decisions are legion as to the weight to be given to administrative constructions of a statute, especially when they are followed by its later substantial reënactment. It is universally agreed that such rulings are entitled to "great weight," but that they are not conclusive [7]; and in this case we think that they should not be. Although, as we have just said, in those decisions there was a condition imposed upon the validity of the issue, it was no more than a formal one: i. e. to get the consent of a public authority to which there would be, so far as appeared, no objection. Here there was no certainty that all the shares could be marketed at $26 as the Commission required. No doubt the difference is only one of degree, but that is often crucial, especially since the question turns on how far the plaintiff would deem itself justified in using the money as free assets. It is one thing to have no impediment but an official consent to an increase of authorized capital and quite another when consent to the increase has been made subject to a condition that is by no means sure to be ful-

filled. We see no reason to assume that the Board that decided the cases cited would have denied relief to a taxpayer in the same position as the plaintiff.

Judgment affirmed.

---

6. Bridgeport Hydraulic Company, 22 T.C. 215.

7. Estate of Sanford v. Commissioner, 308 U.S. 39, 52, 60 S.Ct. 51, 84 L.Ed. 20.