**WESTCHESTER GENERAL HOSPITAL, INC., Plaintiff,**

v.

**DEPARTMENT OF HEALTH, EDUCATION & WELFARE and Blue Cross of Florida, Inc., Defendants.**

No. 77–364–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Jan. 22, 1979.

Peter L. Dearing, Jacksonville, Fla., for plaintiff.

John J. Daley, Jr., United States Atty., Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for defendants.

OPINION

CHARLES R. SCOTT, Senior District Judge.

Pursuant to Fed.R.Civ.P. 65(a)(2), plaintiff and defendants have stipulated that the Court may proceed to render a consolidated final decision on the merits of this case, based upon the complete record presented for plaintiff's preliminary injunction motion. The parties have indicated that they "have no desire or intention to present any further evidence" than that which is already contained in the record. A preliminary injunction, issued by the Court on June 27, 1977, remains in effect. *Westchester Gen. Hosp. v. HEW*, 434 F.Supp. 435 (M.D.Fla.1977).

*Facts*

Plaintiff, Westchester General Hospital, Inc., is a Florida corporation that owns and operates a 100-bed, general-care hospital in Miami, Florida. Defendant, Department of Health, Education & Welfare ('HEW'), is a department of the executive branch of the federal government. Defendant, Joseph A. Califano, Jr., is the Secretary of HEW ('the Secretary'). Defendant, Blue Cross of Florida, Inc. ('Blue Cross'), is a Florida corporation, licensed to do business in the state as a health insurer. Federal law, 42 U.S.C. § 1395 et seq., imposes a responsibility upon HEW and the Secretary for carrying out the provisions of the federal health insurance program for aged and disabled persons, commonly known as 'Medicare'. The Medicare Act, 42 U.S.C. § 1395 et seq., defines 'provider of services' to include hospitals and skilled nursing facilities. 42 U.S.C. § 1395x(u). Plaintiff is such a provider of services. Blue Cross has contracted with the Secretary and HEW to administer the Medicare program in Florida as a fiscal intermediary, reimbursing plaintiff for its expenses in providing health care services under the Medicare Act. *See* 42 U.S.C. § 1395h.

On specifically prescribed forms, plaintiff is required to submit annual cost reports to Blue Cross which retains those reports in its possession. In April, 1977, a reporter for a national publication requested from Blue Cross, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq., a copy of plaintiff's 1975 cost report. When Blue Cross informed plaintiff that it would comply with the request, and disclose the cost report, plaintiff began this action on May 9, 1977. After the issuance of temporary restraining orders, a preliminary injunction,

issued June 27, 1977, has prevented disclosure of plaintiff's 1975 cost report. When Blue Cross was faced with subsequent requests for plaintiff's 1976 cost report, the Court amended the preliminary injunction on October 13, 1977, to restrain disclosure of the 1975 cost report, the 1976 cost report, and any later cost reports. Disclosure of three of plaintiff's cost reports, then, for the years 1975–77, is at stake in the present case.

*Issues*

Plaintiff's claim in this case is that disclosure of its cost report is contrary to, and prohibited by, federal law. The Secretary has promulgated a regulation, 20 C.F.R. § 422.435(c), requiring, "upon a request in writing," that "cost reports submitted by providers of services" be made available to the public. By honoring the requests for disclosure of plaintiff's cost reports, Blue Cross would be complying with the HEW regulation. Because the requested disclosure of plaintiff's cost reports is mandated by the regulation, plaintiff's contention that such disclosure is forbidden by federal law necessarily attacks the mandatory regulation as repugnant to federal law.

The specific federal statute which plaintiff believes forbids disclosure of its cost reports is the Trade Secrets Act, 18 U.S.C. § 1905. Plaintiff's primary contention is that its cost reports are exempted from mandatory disclosure by the Freedom of Information Act ('FOIA'), 5 U.S.C. § 552, as confidential commercial or financial information under Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4); and that such Exemption 4 information is prohibited from disclosure by the Trade Secrets Act, 18 U.S.C. § 1905. Because defendants initially contest plaintiff's assertion that its cost reports are exempt from mandatory disclosure under Exemption 4 of the FOIA, plaintiff raises a second argument. If its cost reports are not exempted from compulsory disclosure under Exemption 4 of the FOIA, then plaintiff maintains that those cost reports are nevertheless prohibited from the mandatory disclosure provisions of the FOIA by the superior prohibition of 18 U.S.C. § 1905.

Defendants, on the other hand, argue first that plaintiff's cost reports are not exempted from compulsory disclosure by Exemption 4 of the FOIA, and that 18 U.S.C. § 1905 does not otherwise curtail the compulsory disclosure provisions of the FOIA. Consequently, the disclosure of plaintiff's cost reports required by HEW's regulation is consistent with mandatory disclosure under the FOIA. Alternatively, defendants contend that, even if plaintiff's cost reports are confidential commercial or financial information exempted from required disclosure under Exemption 4 of the FOIA, mandatory disclosure required by the HEW regulation is not antithetic to 18 U.S.C. § 1905, and is otherwise lawful.

The overall issue presented by this case, therefore, is whether the HEW regulation, 20 C.F.R. § 422.435(c), is lawful in requiring disclosure of information such as plaintiff's cost reports. In order to decide that principal issue, however, the Court must first consider several questions which are inextricably a part of the legal arguments and the overall issue in this case: (1) whether plaintiff's cost reports are confidential commercial or financial information which is exempted from required disclosure by Exemption 4 of the FOIA; (2) if the cost reports do not fall within Exemption 4, is the otherwise mandatory disclosure of them under the FOIA nonetheless prohibited by 18 U.S.C. § 1905? (3) if the cost reports are exempted from compulsory disclosure by Exemption 4 of the FOIA, are they furthermore prohibited from disclosure by 18 U.S.C. § 1905? Based on the reasons which follow, the Court concludes that (1) whether plaintiff's cost reports fall within the scope of Exemption 4 of the FOIA or not, their disclosure is not forbidden by the ban of the Trade Secrets Act, 18 U.S.C. § 1905; and (2) therefore, the HEW regulation which mandates disclosure is lawful.

I. *FOIA & Mandatory Disclosure*

The FOIA is sweeping legislation, opening up "access to official information long

shielded unnecessarily from public view." *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 128 (1973). The basic policy of Congress in enacting the statute was to establish a "'general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Department of Air Force v. Rose*, 425 U.S. 352, 360, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 21 (1976), quoting Sen.Rep. No.813, 89 Cong. 1st Sess., 3 (1965). As a result, "all federal agency records are prima facie disclosable to any member of the public," upon request. *Kent Corp. v. NLRB*, 530 F.2d 612, 617 (5th Cir. 1976), *cert. denied* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

> The basic purpose of the FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159, 178 (1978).

At the same time, important rights of privacy and confidentiality are protected by the creation of nine exclusive exemptions from mandatory disclosure. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. at 219, 98 S.Ct. at 2316, 57 L.Ed.2d at 165; *EPA v. Mink*, 410 U.S. at 79, 93 S.Ct. at 832, 35 L.Ed.2d at 128; *Chrysler Corp. v. Schlesinger*, 565 F.2d 1172, 1184, 1192 (3d Cir. 1977), *cert. granted sub nom. Chrysler v. Brown*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978). Material which falls within any of those nine exemptions is excluded from the FOIA's mandatory disclosure requirements. *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 614 (9th Cir. 1978); *Doctors Hosp. of Sarasota, Inc. v. Califano*, 455 F.Supp. 476, 479 (M.D.Fla.1978). Those nine exemptions are permissive, not mandatory, allowing an agency having control over the exempted information discretion to decide whether to disclose or withhold it. The FOIA exemptions themselves, therefore, do not forbid disclosure of information. *General Dynamics Corp. v. Marshall*, 572 F.2d 1211, 1215–16 (8th Cir. 1978); *Chrysler Corp. v. Schlesinger*, 565 F.2d at 1185–86; *Superior Oil Co. v. FPC*, 563 F.2d 191, 203–04 (5th Cir. 1977); *Sears, Roebuck & Co. v. GSA*, 180 U.S.App.D.C. 202, 205, 553 F.2d 1378, 1381 (1977); *Pennzoil Co. v. FPC*, 534 F.2d 627, 630 (5th Cir. 1976); *Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. 286, 292, 519 F.2d 935, 941 (1975); *Doctors Hosp. of Sarasota, Inc. v. Califano*, 455 F.Supp. at 279. *See Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 21 (1976); *EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 128 (1973). *Contra Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d 1190, 1209, 1210 (4th Cir. 1976), *cert. denied sub nom. Brown v. Westinghouse Elec. Corp.*, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977). Those exemptions are to be interpreted narrowly, *Department of Air Force v. Rose*, 425 U.S. at 361, 96 S.Ct. at 1599, 48 L.Ed.2d at 21; *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724, 727 (5th Cir. 1977), *rev'd on applicability of Exemption 7*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); and the burden of proof is upon the parties seeking to invoke an exemption from mandatory disclosure. *EPA v. Mink*, 410 U.S. at 80, 93 S.Ct. at 832, 35 L.Ed.2d at 128; *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir. 1978); *Committee on Masonic Homes v. NLRB*, 556 F.2d 214, 218 (3d Cir. 1977); *National Parks & Conservation Ass'n v. Kleppe*, 178 U.S.App.D.C. 376, 382 n. 20, 547 F.2d 673, 679 n. 20 (1976).

If defendants' view is correct, and plaintiff's cost reports do not fall within the narrow purview of Exemption 4, then they must be disclosed unless some other statute overrides the FOIA's mandatory disclosure provisions. Plaintiff claims that the Trade Secrets Act, 18 U.S.C. § 1905, is such a statute. To be such a statute, however, the Trade Secrets Act must qualify as the kind of statute contemplated by Exemption 3 of the FOIA, and it must afford a private right of action to enforce its provisions. This is (1) because the only other statutes to which the FOIA defers are those that qualify under its Exemption 3, and (2) because 18 U.S.C. § 1905 is a criminal statute.

A. *Exemption 3 & 18 U.S.C. § 1905*

Exemption 3 of the FOIA allows certain qualifying nondisclosure statutes to override the required disclosure provisions of the FOIA. 5 U.S.C. § 552(b)(3) provides:

> This section does not apply to matters that are—specifically exempt from disclosure by statute (other than § 552(b)), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . .

Congress amended this exemption in 1976[1] by adding the two qualifying conditions for a statute to override the disclosure requirements of the FOIA and withhold information from disclosure. In order for a nondisclosure statute to override the compulsory disclosure requirements of the FOIA, by means of Exemption 3, the particular statute must (1) absolutely forbid disclosure or (2) set forth specific standards and criteria for withholding information or refer with sufficient particularity to kinds of information to be withheld so as to remove any unlimited discretion about withholding or disclosing information.[2]

Before the 1976 revision of Exemption 3 by the Government in the Sunshine Act, it was uncertain whether statutes which withhold generally information, unless disclosure is specifically authorized, were exempt from the mandatory disclosure under the FOIA. Three different courts had rejected the Secretary's view that information covered by another general nondisclosure statute[3] was exempt from required disclosure under the FOIA. Those courts had held that, because a general nondisclosure statute was too broad of a blanket, discretionary prohibition against disclosure, without specifically prescribed guidelines for, or identified classes or categories of, information to be withheld, such a general nondisclosure statute could not qualify, under Exemption 3, to overcome the liberal disclosure requirement of the FOIA. *Schechter v. Weinberger*, 165 U.S.App.D.C. 236, 238, 506 F.2d 1275, 1277 (1974); *Stretch v. Weinberger*, 495 F.2d 639, 640 (3d Cir. 1974); *Serchuk v. Richardson*, No. 72–1212–Civ–Pf (S.D.Fla., Nov. 28, 1972), *aff'd sub nom. Serchuk v. Weinberger*, 493 F.2d 663 (5th Cir. 1974). *See Lee Pharmaceuticals v. Kreps*, 577 F.2d at 615 and n. 3.

The Ninth Circuit Court of Appeals, however, had reached a different conclusion in *California v. Weinberger*, 505 F.2d 767 (9th Cir. 1974). That court regarded the language "specifically exempted from disclosure by statute" in Exemption 3 as requiring only that a restriction on disclosure be explicit in the facial language of the statute, rather than being inferable from it. *Id.* at 768. An express, but universal, statutory prohibition such as "no records" or "all records", would suffice to exempt any information covered by such a statute from the compulsory disclosure provisions of the FOIA. *Id.*

1. Act of Sept. 13, 1976, Pub.L.No.94–409, 90 Stat. 1241.

2. Examples of statutes that qualify under the 1976 amendment of Exemption 3 to override and prevent the disclosure requirements of the FOIA, are §§ 706(b) and 709(e) of the amended 1965 Civil Rights Act, 42 U.S.C. §§ 2000e–5(b) and 2000e–8(e); § 314(a)(3) of the Federal Election Campaign Act, 2 U.S.C. § 437g(a)(3); § 801 of the 1958 Federal Aviation Act, 49 U.S.C. § 1461. *See* H.Rep.No.880, 94th Cong., 2d Sess., U.S.Code Congr'l & Admin.News, pp. 2183, 2191–92 (1976). Other examples of Exemption 3 statutes are §§ 403(d)(3) and 403g of the Central Intelligence Act, 50 U.S.C. §§ 403(d)(3), 403g, *Weissman v. CIA*, 184 U.S. App.D.C. 117, 119, 565 F.2d 692, 694 (1977); *Cerveny v. CIA*, 445 F.Supp. 772, 775 (D.Colo. 1978); *Fonda v. CIA*, 434 F.Supp. 498, 504 (D.D.C.1977); *Baker v. CIA*, 425 F.Supp. 633, 636 (D.D.C.1977); *Bennett v. United States Dep't of Defense*, 419 F.Supp. 663, 667 (S.D.N.Y.1976); *Richardson v. Spahr*, 416 F.Supp. 752, 753–54 (W.D.Pa.1976), *aff'd* 547 F.2d 1163 (3d Cir. 1976), *cert. denied* 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); and § 122 of the Patent Act, 35 U.S.C. § 122, *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 616–17 (9th Cir. 1978).

3. Section 1106 of the Social Security Act, 42 U.S.C. § 1306.

In 1975, the Supreme Court resolved the conflict. The Court considered "the scope and meaning" of the third exemption of the FOIA and agreed with the Ninth Circuit. *FAA Administrator v. Robertson,* 422 U.S. 255, 261, 262 n. 6, 95 S.Ct. 2140, 2145, 2146 n. 6, 45 L.Ed.2d 164, 170, 171 n. 6 (1975). *See Lee Pharmaceuticals v. Kreps,* 577 F.2d at 615. In that case, the plaintiffs requested disclosure of reports containing evaluative analyses of operation and maintenance performances by commercial airlines. The Federal Aeronautics Administration ('FAA') refused to disclose the report. The FAA claimed that Exemption 3 allowed the discretionary nondisclosure authority of § 1104 of the Federal Aviation Act to override the obligatory disclosure dictates of the FOIA. Articulating a theory of implied repeal, the Supreme Court concluded that use of the term "specific" in Exemption 3 did not indicate that Congress had reconsidered and revoked all of the existing statutes in which it had delegated general authority to withhold information. *Id.* at 265, 95 S.Ct. at 2147, 45 L.Ed.2d at 173. Such a theory was both practically impossible and theoretically disfavored. *Id.* at 265–66, 95 S.Ct. at 2147, 45 L.Ed.2d at 173. Finding nothing in the legislative history or statutory language that hinted at an implied repeal of statutes which leave matters of disclosure to general agency discretion, *id.* at 269, 95 S.Ct. at 2149, 45 L.Ed.2d at 175 (Stewart, J. concurring in the judgment), the Court concluded that such statutes are compatible with the FOIA by avoiding its mandatory disclosure requirement through Exemption 3. *Id.* at 267, 95 S.Ct. at 2148, 45 L.Ed.2d at 174.

The Supreme Court, however, had incorrectly resolved the conflict among the lower federal courts concerning the kind of statute to which Exemption 3 applied. Therefore, the Court's interpretation of that exemption was short-lived. Less than fourteen months later, Congress amended Exemption 3 by the Government in the Sunshine Act. That amendment added two alternative conditions, either of which a statute must meet in order to qualify as a specific authorization to withhold information, notwithstanding the FOIA's mandatory disclosure provisions. Those two alternative conditions are (1) that the particular statute removes discretion concerning disclosure by absolutely forbidding it, or (2) that the exercise of discretion to withhold information is limited to specific standards and criteria intrinsically set forth in the statute, or to particular classes or kinds of information, so as to avoid unbridled discretion concerning it. By amending Exemption 3 and adding those two alternative, qualifying conditions, Congress expressly rejected, and intended to overrule, the Supreme Court's understanding of Exemption 3 in *FAA Administrator v. Robertson, supra. See Lee Pharmaceuticals v. Kreps,* 577 F.2d at 615 and nn. 4 and 5; *Sears, Roebuck & Co. v. GSA,* 180 U.S.App.D.C. at 207–08, 553 F.2d at 1383–84; *National Parks & Conservation Ass'n v. Kleppe,* 178 U.S.App. D.C. at 390 and n. 49, 547 F.2d at 687 and n. 49; *Nationwide Mutual Ins. Co. v. Friedman,* 451 F.Supp. 736, 742 (D.Md.1978). The House Report concerning the 1976 amendment to Exemption 3 stated that the purpose of the amendment was "to overrule the decision of the Supreme Court" in *FAA Administrator v. Robertson, supra.* The House Judiciary Committee,

> [b]elieving that the decision [in *FAA Administrator v. Robertson*] misconceives the intent of exemption (3) . . . recommend[ed] that the exemption be amended to exempt only material required to be withheld from the public by any statute establishing particular criteria or referring to particular types of information. The committee is of the opinion that this change would eliminate the gap created in the Freedom of Information Act by the *Robertson* case without in any way endangering statutes such as the Atomic Energy Act of 1954 . .
>
> Under the amendment, the provisions of the Federal Aviation Act of 1958 that was the subject of *Robertson* and which affords the FAA Administrator *carte blanche* to withhold any information he pleases, would not come within exemp-

tion 3. H.Rep.No.880, 94th Cong., 1st Sess., 23 U.S.Code Congr'l & Admin. News, pp. 2183, 2205 (1976).

At conference, although the Senate Bill was passed and ultimately enacted into law as the Government in the Sunshine Act, it was amended to contain much of the language in the House Bill.

> The conference substitute is the same as the House amendment, except that the third exemption, incorporating by reference exemptions contained in other statutes, applies only to statutes that either (a) require that the information be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establish particular criteria for withholding or refer to particular types of information to be withheld. The conferees intend this language to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) . . H.Conf.Rep.No.1441, 94th Cong., 1st Sess., 14, U.S.Code Congr'l & Admin. News, pp. 2244, 2250 (1976).

Congress, therefore, expressly rejected the Supreme Court's interpretation of Exemption 3, as well as the Court's reasoning that Congress had not, in enacting the FOIA, implicitly repealed general, discretionary nondisclosure statutes. The conference report then declared again that

> . . . [t]he conference substitute amends the third exemption in 5 U.S.C. 552(b) to include information specifically exempted from disclosure by statute (other than new section 552(b) [which is the newly-enacted Government in the Sunshine Act]), if the statute either (a) requires that the information be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establishes particular criteria for withholding or refers to particular types of information to be withheld. The conferees intend this language to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which dealt with section 1104 of the Federal Aviation Act of 1958 (49 U.S.C.

1504). H.Conf.Rep.No.1441, 94th Cong., 1st Sess., 25, U.S.Code Congr'l & Admin. News, pp. 2244, 2260–61 (1976).

As a direct result of the 1976 amendment of Exemption 3, therefore, general, discretionary nondisclosure statutes, like 18 U.S.C. § 1905, no longer qualify as the kind of statute to withhold information in disregard of the liberal disclosure requirements of the FOIA.

But Congress was even more explicit. After declaring Congressional intent to overrule the Supreme Court's interpretation of Exemption 3, in *FAA Administrator v. Robertson, supra,* the House Report expressly declared that 18 U.S.C. § 1905 did not qualify under the amended Exemption 3.

> Under the amendment [to Exemption 3] . . . the Trade Secrets Act, 18 U.S.C. section 1905, which relates only to the disclosure of information where disclosure is "not authorized by law", would not permit the withholding of information otherwise required to be disclosed by the Freedom of Information Act, since the disclosure is there authorized by law. Thus, for example, if material did not come within the broad trade secrets exemption contained in the Freedom of Information Act [i. e., Exemption 4], section 1905 would not justify withholding; on the other hand, if the material is within the trade secrets exemption of the Freedom of Information Act [i. e., Exemption 4] and therefore subject to disclosure if the agency determines that disclosure is in the public interest, section 1905 must be considered to ascertain whether the agency is forbidden from disclosing the information. *See Charles River Park "A", Inc. v. Dept. of Housing and Urban Development,* 171 U.S.App.D.C. 286, 292 n. 7, 519 F.2d 935, 941 n. 7 (D.C.Cir.1975), and cases there cited. H.Rep.No.880, 94th Cong., 1st Sess. at 23, U.S.Code Congr'l & Admin.News, pp. 2183, 2205 (1976).

By citing the *Charles River Park "A", Inc. v. HUD* decision, the House Report express-

ly approved the D.C. Court of Appeals' statement that the FOIA exemptions do "not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption", as well as that court's conclusion that § 1905 is applicable in FOIA cases only when information in question is both included in Exemption 4 and within § 1905. 171 U.S.App. D.C. at 292 n.7, 519 F.2d at 941 n.7. *See Sears, Roebuck & Co. v. GSA*, 180 U.S.App. D.C. at 207–08, 553 F.2d at 1383–84; *National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d at 686–87.

It is the general, unlimited delegation of discretionary authority to withhold disclosure of information, that disqualifies § 1905 from overriding the FOIA's obligatory disclosure provisions, by means of Exemption 3. If plaintiff's cost reports are not confidential commercial or financial information included within the scope of Exemption 4, therefore, the Trade Secrets Act, 18 U.S.C. § 1905, cannot prohibit their disclosure. There is, however, an additional reason why this is so.

B. *18 U.S.C. § 1905 & Implied, Private Civil Claims*

The Trade Secrets Act, 18 U.S.C. § 1905,[4] is a criminal statute, requiring a fine of $1,000.00 or imprisonment up to one year, or both, as well as automatic removal from office or employment. The statute was intended to prohibit federal officers or employees from disclosing, "to any extent not authorized by law," trade secrets and other confidential business or financial information.

The Fourth Circuit Court of Appeals has held that § 1905 provides an independent, private civil claim to enjoin disclosure of information included within its scope. *Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d at 1209–10. It is true that the Supreme Court has recognized in the past implied private claims derived from federal statutes that did not contain express and specifically authorized private claims. *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 201–02, 88 S.Ct. 379, 385–86, 19 L.Ed.2d 407, 415–16 (1967); *J. I. Case Co. v. Borak*, 377 U.S. 426, 430–31, 84 S.Ct. 1555, 1558–59, 12 L.Ed.2d 423, 426–27 (1964); *United States v. Republic Steel Corp.*, 362 U.S. 482, 492, 80 S.Ct. 884, 890, 4 L.Ed.2d 903, 911 (1960); *Switchmen's Union of N. Amer. v. National Mediation Bd.*, 320 U.S. 297, 300–01, 64 S.Ct. 95, 96–97, 88 L.Ed. 61, 64 (1943); *Texas & Pacif. Ry. Co. v. Rigsby*, 241 U.S. 33, 40, 36 S.Ct. 482, 484, 60 L.Ed. 874, 877 (1916). Furthermore, the existence of a criminal statute, providing penalties and sanctions for violating it, does not necessarily always preclude the inference of an available private civil claim. *Cort v. Ash*, 422 U.S. 66, 79–80, 95 S.Ct. 2080, 2088–89, 45 L.Ed.2d 26, 37 (1975).

However, it is now certain that courts may infer private, civil claims from federal criminal statutes only if (1) the putative plaintiffs are members of the class for whose benefit the statute was specially enacted; (2) the language or legislative history of the statute indicates, explicitly or implicitly, a legislative intent to create or deny such a private claim; (3) the inference of a private claim is consistent with the underlying legislative purposes; and (4) the

4. The Trade Secrets Act, 18 U.S.C. § 1905, provides:

> Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or *to any extent not authorized by law* any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or emplo۰ment. (emphasis added).

purported private claim is not traditionally relegated to the sphere of state law, and therefore inappropriate to derive from federal law. *Piper v. Chris-Craft, Inds., Inc.*, 430 U.S. 1, 37–42, 97 S.Ct. 926, 947–949, 51 L.Ed.2d 124, 150–154 (1977); *Cort v. Ash*, 422 U.S. at 80–85, 95 S.Ct. at 2089–91, 45 L.Ed.2d at 37–40; *National RR. Passenger Corp. v. National Ass'n of RR. Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 38 L.Ed.2d 646, 652–53 (1974); *New York Stock Exch. v. Bloom*, 183 U.S.App.D.C. 217, 223 n. 5, 562 F.2d 736, 742 n. 5 (1977); *Starbuck v. City & County of San Francisco*, 556 F.2d 450, 454 (9th Cir. 1977); *Kipperman v. Academy Life Ins. Co.*, 554 F.2d 377, 380 (9th Cir. 1977); *Lloyd v. Regional Transp. Authority*, 548 F.2d 1277, 1284 (7th Cir. 1977); *Wentworth v. Solem*, 548 F.2d 773, 775 (8th Cir. 1977); *Rauch v. United Instruments, Inc.*, 548 F.2d 452, 456 (3 Cir. 1976); *N. B. Guran Co. v. Akron, Ohio*, 546 F.2d 201, 204–05 (6th Cir. 1976); *Mason v. Belieu*, 177 U.S.App.D.C. 68, 74, 543 F.2d 215, 221 (1976); *Harmsen v. Smith*, 542 F.2d 496, 501–02, 503 (9th Cir. 1976).

Neither the legislative history,[5] nor the facial language, of the statute suggests any congressional intent that implied, private, civil claims should be derived from 18 U.S.C. § 1905. *Sears, Roebuck & Co. v. Eckerd*, 575 F.2d 1197 at 1202 and n. 14. The apparent scope of the statute's criminal prohibition is broad; and the penalties imposable for violations of it are adequate to achieve its intended goals. *Chrysler Corp. v. Schlesinger*, 565 F.2d at 1188. Consequently, constructing an implied, private, civil claim from § 1905 would be inappropriate because it would be inconsistent with the character and purpose of the statute. *Sears, Roebuck & Co. v. Eckerd*, 575 at 1202, 1203. Finally, the exception to the statute's prohibition, allowing disclosures "authorized by law," supplies also a possible claim for plaintiff that the disclosure of particular information, although authorized, is improper. Such a claim would stem, however, from the judicial review procedures of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. *Sears, Roebuck & Co. v. Eckerd*, 575 F.2d at 1202. The standard and scope of review for such a remedy would be whether the particular disclosure authorized was an abuse of agency discretion, based on a determination limited to the agency's administrative record, 5 U.S.C. § 706(2)(A); *General Dynamics Corp. v. Marshall*, 575 F.2d 1211, 1217 (8th Cir. 1978); *Chrysler Corp. v. Schlesinger*, 565 F.2d at 1188; *Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. at 292 n. 6, 519 F.2d at 941 n. 6; or, if the particular disclosure is required by administrative regulation or policy (as here), then the appropriate standard and scope of review would be whether the compelling administrative regulation or policy exceeds the statutory jurisdiction or authority under which it was issued. 5 U.S.C. § 706(2)(C). Without any indication of legislative intent, or of a need to further the legislative purpose, it would be inappropriate to infer a private, civil claim from 18 U.S.C. § 1905. *Sears, Roebuck & Co. v. Eckerd*, 575 F.2d at 1203. *Cf. Santa Fe Inds., Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480, 494 (1977).

The Court, therefore, concludes that the Trade Secrets Act, 18 U.S.C. § 1905, does not prohibit the release of plaintiff's cost reports if they are otherwise subject to mandatory disclosure under the FOIA, as defendants contend.

II. *FOIA & Exempted Information*

On the other hand, plaintiff has maintained that its cost reports are exempted by Exemption 4 from the FOIA's obligatory disclosure provisions, and that in addition

5. The Trade Secrets Act today, 18 U.S.C. § 1905, is the product of congressional legislation in 1948. Act of June 25, 1948, 62 Stat. 791, 80th Cong., 2d Sess. Three earlier nondisclosure statutes, 18 U.S.C. § 216 (1940), 19 U.S.C. § 1335 (1940) and 15 U.S.C. § 176b (1940), were consolidated into the lengthy nondisclosure provisions of 18 U.S.C. § 1905. *See generally*, Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit*, Tex.L.Rev. 587, 624–26 (1977).

the Trade Secrets Act, 18 U.S.C. § 1905 forbids the disclosure of such Exemption 4 information. Defendants dispute the assertion that plaintiff's cost reports are exempted under Exemption 4 from mandatory disclosure. Nevertheless, defendants insist that, even if Exemption 4 does include the cost reports, 18 U.S.C. § 1905 does not prohibit the disclosure of them required by the HEW regulation.

A. *Exemption 4 & 18 U.S.C. § 1905*

Exemption 4 of the FOIA permits "trade secrets and commercial or financial information obtained from a person and privileged or confidential" to be relieved from obligatory disclosure, and to be withheld if warranted. Although it is primarily a trade secrets exemption, it also protects individuals from disclosure of commercial or financial information that is privileged or confidential. *Rural Housing Alliance v. United States Dep't of Agric.*, 162 U.S.App. D.C. 122, 127, 498 F.2d 73, 78 (1974). For information other than trade secrets to be included in Exemption 4, the statute establishes three essential criteria. The information must be (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential. *Continental Oil Co. v. FPC*, 519 F.2d 31, 35 (5th Cir. 1975), *cert. denied sub nom. Superior Oil Co. v. FPC*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 794 (1976); *National Parks & Conservation Ass'n v. Morton*, 162 U.S.App.D.C. 223, 228, 498 F.2d 765, 770 (1974); *Getman v. NLRB*, 146 U.S. App.D.C. 209, 212, 450 F.2d 670, 673 (1971); *Sonderegger v. United States Dep't of Interior*, 424 F.Supp. 847 at 851; *Ditlow v. Volpe*, 362 F.Supp. 1321, 1324 (D.D.C.1973), *rev'd on another ground sub nom. Ditlow v. Brinegar*, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974). The term 'person' in Exemption 4 includes corporations as well as individuals. *Continental Oil Co. v. FPC*, 519 F.2d at 35 n. 13.

There is no statutory definition of the term 'confidential' in Exemption 4. The courts, however, have universally accepted the twofold, objective test for confidential information set forth in *National Parks & Conservation Ass'n v. Morton*, 162 U.S.App. D.C. at 228, 498 F.2d at 770:

> . . . commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*See Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d at 1190 n. 55; *Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. at 291, 519 F.2d at 940; *Continental Oil Co. v. FPC*, 519 F.2d at 35; *Rural Housing Alliance v. United States Dep't of Agric.*, 162 U.S.App.D.C. at 127–28, 498 F.2d at 78–9; *Westchester Gen. Hosp., Inc. v. HEW*, 434 F.Supp. 435, 438 (M.D.Fla.1977); *Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn.*, 430 F.Supp. 1093 at 1096; *Sonderegger v. United States Dep't of Interior*, 424 F.Supp. at 852. Only commercial or financial information that satisfies either of the twofold, definitional test of 'confidential' is exempt under Exemption 4 from mandatory disclosure. *Continental Oil Co. v. FPC*, 519 F.2d at 36; *Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. at 291, 519 F.2d at 940.

Although the Court tentatively concluded, when issuing the preliminary injunction in this case, that plaintiff's cost reports are the kind of confidential commercial or financial information exempted by Exemption 4, *Westchester Gen. Hosp., Inc. v. HEW*, 434 F.Supp. at 437, 440, there are serious doubts about that conclusion. Certainly, disclosure of the cost reports will not impair the government's ability to obtain such information from Medicare providers in the future. Neither is it certain that disclosure of the cost reports will substantially harm plaintiff's competitive position. If the HEW regulation which required disclosure of cost reports is valid, the same information about all hospital providers will be equally accessible to everyone. In other words, every hospital will have equal access to the cost report information about its

potential competitors. Where every member of the relevant, competitive market is affected similarly, it is somewhat specious theoretically to argue that a change from unavailable, to equally available, information is anticompetitive. Furthermore, much of the information contained in plaintiff's cost reports, which it asserts is confidential, and would have adverse competitive effects if revealed, is in fact already available from other sources. The Court will resolve these doubts in favor of plaintiff's view that the cost reports are included within Exemption 4, since as a matter of law, the HEW regulation requiring their disclosure is lawful, whether they are exempted from, or subject to, mandatory disclosure under the FOIA.

Plaintiff argues more. Additionally, plaintiff argues that, besides being excluded by Exemption 4 from required disclosure, the cost reports are prohibited from disclosure by 18 U.S.C. § 1905. Plaintiff misunderstands the relationship between Exemption 4 of the FOIA and 18 U.S.C. § 1905. This additional theory of plaintiff is premised on the belief that confidential or commercial financial information, relieved by Exemption 4 of obligatory disclosure under the FOIA, is also automatically prohibited from disclosure by 18 U.S.C. § 1905.

As already noted, 18 U.S.C. § 1905 is a nondisclosure statute with a general prohibition, and an exception for disclosures "authorized by law." Particular information which satisfies the objective, twofold test for confidential information under Exemption 4, and is not "authorized by law" to be disclosed, falls squarely within the prohibition of § 1905. However, where there is authorization by law to disclose Exemption 4 information, that information falls within the exception to § 1905's prohibition. In other words, not all information that is exempted from the FOIA's required disclosure under Exemption 4 is automatically forbidden from disclosure by § 1905. Exemption 4 information that is "authorized by law" to be disclosed is not prohibited from being disclosed by § 1905. Only Exemption 4 information that is not "authorized by law" to be disclosed is necessarily forbidden to be disclosed by § 1905.

It is true that, at first blush, this Court viewed the interrelationship between Exemption 4 and § 1905 differently. After concluding that "disclosure of the cost report[s] would adversely affect" plaintiff's competitive position, and that they were therefore likely included within the scope of Exemption 4, the Court issued the preliminary injunction in this case preventing the Secretary from releasing those cost reports. *Westchester Gen. Hosp., Inc. v. HEW*, 434 F.Supp. at 440. The Court then concluded further that "[i]t is very likely that disclosure of plaintiff's [cost reports] would violate § 1905," and then flatly declared: "18 U.S.C. § 1905, and [Exemption 4 of the FOIA] are equivalent in scope." *Id.* at 439. Finally, the Court held that "in all likelihood" the HEW regulation mandating disclosure of the cost reports "conflicts with" 18 U.S.C. § 1905 and "must therefore be set aside". *Id.* at 440.

To support the bald assertion that § 1905 and Exemption 4 "are equivalent in scope", this Court quoted the Fourth Circuit's decision in *Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d at 1190 (4th Cir. 1976):

> "We group § 1905 and Exemption 4 together because it has been uniformly held that the scope of § 1905 and Exemption 4 of the FOIA are, as stated in *Pharmaceutical Manufacturers Ass'n v. Weinberger*, (D.C.D.1975), 401 F.Supp. 444 at 446, 'the same,' or, as put in *Ditlow*, 362 F.Supp. at 1324, 'co-extensive.' Accordingly, material qualifying for exemption under (b)(4) falls within the material, disclosure of which is prohibited under § 1905. And this was the specific holding in *Charles River Park* (171 U.S. App.D.C. 292–93 and n. 7, 519 F.2d pp. 941–42 and n. 7)." 542 F.2d at 1204 n. 38.

*Westchester Gen. Hosp., Inc. v. HEW*, 434 F.Supp. at 439. Repeatedly, the Fourth Circuit, in *Westinghouse Elec. Corp. v. Schlesinger, supra*, stated that the scope of Exemption 4 and § 1905 are "the same" or "co-extensive", 542 F.2d at 1200, 1204 n. 38, 1206 and n. 47, 1207; and then concluded

that information which satisfies the twofold test for "confidential" under Exemption 4 "is *necessarily* both within Exemption 4 . . . and the prohibition of § 1905." *Id.* at 1201 n. 27 (emphasis added). For the premise that Exemption 4 and § 1905 are equivalent, as well as the conclusion that Exemption 4 information necessarily is prohibited from disclosure by § 1905, the Fourth Circuit relied on several decisions within the D.C. Circuit, especially what the Fourth Circuit called cryptic language by the D.C. Circuit in *Charles River Park "A", Inc. v. HUD, supra.*

For example, in *Grumman Aircraft Engineering Corp. v. Renegotiating Bd.*, 138 U.S.App.D.C. 147, 149 n. 5, 425 F.2d 578, 580 n. 5 (1970), the D.C. Circuit had rejected the view that 18 U.S.C. § 1905 operated through Exemption 3 to override the FOIA's disclosure requirements. The D.C. Circuit stated that § 1905 "should not be read to expand this exemption [Exemption 3]," since the information in question there was "already protected from disclosure under the Act by" Exemption 4, and the FOIA "requires that [its] exemptions be narrowly construed." *Id.* The gist of the D.C. Circuit's statement was that, because of the interrelationship between § 1905's prohibition and Exemption 4, § 1905 should not be viewed to expend Exemption 3 as well. While the D.C. Circuit unmistakably recognized the interrelationship between Exemption 4 and 18 U.S.C. § 1905, nowhere is there any hint that the two statutory provisions are equivalent in scope.

In *Ditlow v. Volpe*, 362 F.Supp. 1321 (D.D.C.1973), the district court, while rejecting the defendants' contention that National Highway and Traffic Safety Administration investigatory records were confidential information included within both Exemption 4 of the FOIA and § 1905, also rejected the argument that the National Highway and Traffic Safety Act, together with § 1905, qualified for a blanket exception under Exemption 3 of the FOIA. *Id.* at 1323. The district court then stated that there was "no indication in [the National Highway and Traffic Safety Act] or [its] legislative history of [an] intent to create a special, broadened confidentiality for auto safety information than that available" under Exemption 4 of the FOIA; and that the National Highway and Traffic Safety Act "harmonizes with exemption 4 in protecting trade secrets and privileged or confidential financial or commercial information." Finally, the district court enigmatically stated that "in this case, exemption 3 is co-extensive with exemption 4". *Id.* at 1324. Whatever the statement that Exemption 3 is co-extensive with Exemption 4 might mean, the D.C. District Court emphatically did not state that § 1905 and Exemption 4 were equivalent or co-extensive in scope.

An association of drug companies in *Pharmaceutical Mfrs. Ass'n v. Weinberger*, 401 F.Supp. 444 (D.D.C.1975), sought a preliminary injunction against the disclosure of information supplied to the Food and Drug Administration ('FDA'). The plaintiff-association argued that the Food, Drug and Cosmetic Act and 18 U.S.C. § 1905 were both nondisclosure statutes which prohibited release by the FDA of the information sought. In that case, however, the plaintiff and the defendants had agreed that, "for the purposes of [that] suit," the "scope of coverage of the two nondisclosure statutes and the scope of exemption 4 are . . . the same." *Id.* at 446 and n. 1. Thus, although the parties in the district court agreed that the scope of the two nondisclosure statutes' prohibition and of Exemption 4 was identical for the particular information in question in that case, nowhere did the D.C. District Court conclude that generally and universally § 1905 and Exemption 4 are equivalent in scope.

Finally, the D.C. Circuit in *Charles River Park "A", Inc. v. HUD, supra*, citing its earlier decision in *Grumman Aircraft Engineering Corp. v. Renegotiating Bd., supra,* and *Ditlow v. Volpe, supra*, stated that the FOIA exemptions do not "incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption." 171 U.S.App.D.C. at 292 n. 7, 519 F.2d at 941 n. 7. The D.C. Circuit then declared:

Since only the FOIA's forth exemption deals with matters covered by section 1905, consideration of section 1905 in FOIA cases is appropriate only when the information falls both within the fourth exemption and under section 1905. *Id.*

Contrary to the Fourth Circuit's view (in *Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d at 1201 n. 27, 1204 n. 38, and 1206 n. 47), those statements by the D.C. Circuit do not contain or entail the conclusion that information which qualifies for Exemption 4 of the FOIA "necessarily" falls within the prohibition of § 1905. Neither did the D.C. Circuit equate § 1905 with Exemption 4, or find that the scope of the two was "the same" or "co-extensive". Instead, the D.C. Court of Appeals held that the scope of § 1905 is no greater than the scope of Exemption 4, and that the question of § 1905's prohibition arises "only when" information falls both within Exemption 4 and the prohibition of § 1905, because there is no authorization by law to disclose that information.

Although the scope of § 1905's prohibition is no greater than Exemption 4, it can be less than Exemption 4; and therefore the scope of the two is not "the same" or "co-extensive" or "equivalent." Any information which falls within Exemption 4 of the FOIA, but is also "authorized by law" to be disclosed, falls within the exception to, and outside of the scope of, § 1905's prohibition. In failing to see that the scope of § 1905's prohibition is less than the scope of Exemption 4, precisely when Exemption 4 information falls within the exception to § 1905's prohibition by having disclosure "authorized by law", this Court misunderstood the relationship between Exemption 4 and § 1905. *Westchester Gen. Hosp., Inc. v. HEW*, 434 F.Supp. at 439.

B. *18 U.S.C. § 1905 & Administrative Regulations as Authorization by Law*

This Court's failure to perceive correctly the relationship between Exemption 4 and 18 U.S.C. § 1905 resulted from a more fundamental misunderstanding about the nature of the exception to § 1905's prohibition. In concluding, for purposes of the preliminary injunction in this case, that plaintiff's cost reports were probably confidential information within Exemption 4 of the FOIA, since disclosure would "adversely affect plaintiff's competitive position," the Court stated its belief that "in all likelihood" the HEW regulation authorizing disclosure of the cost reports "conflicts with the federal criminal statute." 434 F.Supp. at 440, citing *Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn., supra,* and *Charles River Park "A", Inc. v. HUD, supra.* The Court reasoned that

> . . . defendants are called upon either to violate a regulation having the force and effect of law, or to violate the criminal statute. If they obey one, they will necessarily violate the other. 434 F.Supp. at 440.

*Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn.,* 430 F.Supp. 1093 (E.D. Tenn.1977), upon which this Court relied for the preliminary injunction in this case, was a similar action to enjoin disclosure of hospital cost reports, the disclosure of which was authorized by the same HEW regulation. The district court held that "the regulation is in derogation of the provisions of section 1905," ruling that the Secretary lacked "authority to promulgate a regulation which limits the scope of § 1905." 430 F.Supp. at 1098.

*Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn.,* in turn, relied upon *Babock & Wilcox Co. v. Rumsfeld,* 70 F.R.D. 595 (N.D.Ohio 1976). That case involved a subcontractor's effort to enjoin the defense department from honoring a FOIA request and disclosing assertedly confidential information within Exemption 4. The district court rejected the defendant's contention that Navy regulations authorizing the disclosures in question satisfied the "authorized by law" exception to § 1905's prohibition. 70 F.R.D. at 601. That court then succinctly declared that such "regulations may not limit the scope of § 1905." *Id.*

The nucleus of this Court's reasoning in issuing the preliminary injunction in this case, and of the district courts' in *Parkridge*

*Hosp., Inc. v. Blue Cross & Blue Shield of Tenn., supra,* and *Babcock & Wilcox Co. v. Rumsfeld, supra,* was the premise that no administrative regulations can constitute authorization by law for the exception to § 1905's prohibition. As authority for that premise, all three courts cited the D.C. Circuit's decision in *Charles River Park "A", Inc. v. HUD, supra.*

*Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. 286, 519 F.2d 935 (1975), was an action by operators of three multi-family housing projects, whose financial reports had been submitted to their mortgagee, the Federal Housing Administration, an agency of the Department of Housing & Urban Development ('HUD'). Upon learning that HUD was about to comply with a FOIA request by the Boston Commissioner of Assessing, for information regarding the project's gross income, the project operators sued to enjoin disclosure. They argued that the information was confidential, financial information, protected against required disclosure by Exemption 4 of the FOIA, and further prohibited from disclosure by § 1905. HUD rejoined that § 1905's prohibition was inapplicable to the housing project's financial reports, because HUD regulations, based on the FOIA and on 5 U.S.C. § 301, permitted the disclosures and therefore fell within the "authorized by law" exception to § 1905. The D.C. Circuit succinctly rejected the notion that the FOIA, which expressly does not apply to material within its exemptions, could serve as a statutory basis for regulations authorizing the disclosure of exempt information. *Id.* 171 U.S.App.D.C. at 293, 519 F.2d at 942. That court also concisely ruled that 5 U.S.C. § 301 "does not authorize regulations limiting the scope of section 1905." *Id.* 171 U.S.App.D.C. at 293–94, 519 F.2d at 942–43. At the same time, however, the court cautioned that "section 1905 is a criminal statute and should be narrowly construed." *Id.* 171 U.S.App.D.C. at 294, 519 F.2d at 943.

Unquestionably, the D.C. Court of Appeals disapproved of regulations based on the FOIA, or on 5 U.S.C. § 301, as authorization for disclosing Exemption 4 information that would otherwise be prohibited by § 1905. Nowhere, however, did the court of appeals suggest, much less decide, that no administrative regulations, if valid, could constitute the authorization by law that falls within the exception to, and outside the scope of, § 1905's prohibition. The D.C. Circuit, therefore, did not decide that no administrative regulations could constitute authorization by law for the exception to § 1905's prohibition—the premise that was indispensible to the Court's preliminary injunction in this case, and to the district courts' decision in *Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn., supra,* and *Babcock & Wilcox Co. v. Rumsfeld, supra.* Neither did the D.C. Court of Appeal's decision in *Charles River Park "A", Inc. v. HUD,* entail the conclusion (reached by the Fourth Circuit in *Westinghouse Elec. Corp. v. Schlesinger, supra*) that any information excluded from required disclosure, by Exemption 4 of the FOIA, is automatically and necessarily prohibited from disclosure by § 1905, notwithstanding a purportedly valid administrative regulation which authorized disclosure.

Decisions of three courts of appeals since the preliminary injunction in this case have led the Court to reconsider its underlying premise about the "authorized by law" exception to § 1905. In *Westinghouse Elec. Corp. v. United States Nuclear Regulatory Comm'n,* 555 F.2d 82 (3d Cir. 1977), the Third Circuit discerned that § 1905's facially broad prohibition applies only to disclosures "not authorized by law." *Id.* at 94. The Court of Appeals then held that disclosures of information in accordance with "a validly enacted agency regulation" are "authorized by law." *Id.* In a later decision, *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172 (3d Cir. 1977), *cert. granted sub nom. Chrysler Corp. v. Brown,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978), that same court specifically held that regulations based on the general housekeeping statute, 5 U.S.C. § 301, allowing disclosures of information by Chrysler to the Office of Federal Contract Compliance ('OFCC') constituted "authorization by law" within the exception to § 1905's prohibition. 565 F.2d at 1186–88.

. . . we adhere to the position . . that § 301 is a separate source of agency authority for the promulgation of disclosure regulations and that disclosures pursuant to such regulations are authorized by law and immune from the prohibitions of § 1905. Since the OFCC disclosure regulations are valid under § 301, all disclosures pursuant to those regulations are authorized by law and therefore not subject to § 1905. *Id.* at 1187–88.

That specific holding was diametrically counter to the D.C. Circuit's ruling in *Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. at 293–94, 519 F.2d at 942–43.

*General Dynamics Corp. v. Marshall,* 572 F.2d 1211 (8th Cir. 1978), was a still later decision virtually identical to the factual situation in *Chrysler Corp. v. Schlesinger.* The Eighth Circuit followed the Third Circuit's decisions, and held that since § 1905's criminal sanctions apply only to disclosure of information "not authorized by law,"

. . . disclosure pursuant to the OFCC regulations is "authorized by law" and is not within the prohibition of 18 U.S.C. § 1905. *Id.* at 1217.

The Eighth Circuit candidly recognized that its decision, like the Third Circuit's was directly contradictory to the D.C. Circuit's decision concerning administrative regulations based on 5 U.S.C. § 301, in *Charles River Park "A", Inc. v. HUD.*

Finally, *Sears, Roebuck & Co. v. Eckerd,* 575 F.2d 1197 (7th Cir. 1978), was another decision involving virtually the same kind of request for OFCC information which was authorized to be disclosed by OFCC regulations. Sears, which opposed such disclosure argued that otherwise valid administrative regulations, based upon 5 U.S.C. § 301, did not "constitute authorization by law for purposes of Section 1905." *Id.* at 1200. The Seventh Circuit disagreed, holding that

. . . regulations valid under 5 U.S.C. § 301 satisfy the "authorized by law" exception to Section 1905. Since validly promulgated regulations have the force of law . . . they satisfy the authorization requirement of 18 U.S.C. § 1905. *Id.*

The Seventh Circuit, therefore, explicitly concurred with the Eighth and Third Circuits. Moreover, the Seventh Circuit straightforwardly confronted the underlying premise, argued by Sears, that no valid administrative regulations could constitute authorization by law for purposes of the exception to § 1905's prohibition. If that proposition were true, only "independent statutory authorization" could qualify for the exception to § 1905's prohibition. The result is absurd:

. . . each time Congress wanted to except an item or class of items from Section 1905 it would have to do so by statute in a manner with sufficient specificity to avoid agency discretion. *Id.* at 1201.

Since 18 U.S.C. § 1905 facially could include material in the files of almost any federal agency, because it encompasses virtually every category of business information, requiring independent statutory authorization would impose a Herculean task upon Congress. Congress would have to review, consider, and enact specific statutes to cover, all of the numerous kinds of business information contained in federal agency files. *Id.* at 1201–02.

Those three courts of appeals, in ruling that disclosure is made pursuant to valid administrative regulations are "authorized by law" for purposes of the exception to § 1905's prohibition, rejected also the Fourth Circuit's conclusion that disclosure of Exemption 4 information is necessarily and automatically prohibited by § 1905 because the scope of Exemption 4 and § 1905 is "the same" or "co-extensive". Only if disclosures of Exemption 4 information pursuant to valid administrative regulations are "not authorized by law" within § 1905's exception can the scope of Exemption 4 and § 1905 be equivalent, and Exemption 4 information automatically and necessarily be prohibited from disclosure by § 1905.

Although some district courts since the Fourth Circuit's decision in *Westinghouse Elec. Corp. v. Schlesinger, supra,* have followed that decision, *North Fla. Regional Hosp., Inc. v. Mutual of Omaha Ins. Co.,* No.

C–77–1808–A (N.D.Ga. Mar. 31, 1978); *Humana of Va., Inc. v. Blue Cross of Va.*, 455 F.Supp. 1174 (E.D.Va.1978), other district courts have rejected it, following instead the decisions by the Third, Seventh and Eighth Circuits. *St. Mary's Hosp., Inc. v. Califano*, 462 F.Supp. 315 (S.D.Fla.1978); *Doctors Hosp. of Sarasota, Inc. v. Califano*, 455 F.Supp. 476 (M.D.1978).

The decision on the preliminary injunction in this case does not prevent the Court, in view of those decisions, from reconsidering the premise that no valid administrative regulations can be authorization by law for purposes of the exception to § 1905's prohibition, and in so doing from reexamining as well the relationship between § 1905 and Exemption 4 of the FOIA. While the Court's reasoning and conclusions were firm for the purposes of issuing the preliminary injunction, they are tentative and not binding on a final decision on the merits of this case. *Jacksonville Maritime Ass'n v. Local 1408–A, Int'l Longshoremen's Ass'n*, 424 F.Supp. 58, 69 (M.D. Fla.1976), *aff'd* 571 F.2d 319 (5th Cir. 1978); *Schrank v. Bliss*, 412 F.Supp. 28, 42 (M.D. Fla.1976); *Poe v. Charlotte Memorial Hosp.*, 374 F.Supp. 1302, 1312 (W.D.N.C.1974). In other words, the Court, having not reached the merits of the issues in this case, is free to reach a different decision on the merits than that which was tentatively contemplated in the preliminary injunction. *See Tanner v. McCall*, 441 F.Supp. 503, 508–09 (M.D.Fla.1977). The Court, therefore, holds that "[s]ince validly promulgated regulations . . . satisfy the authorization requirement of 18 U.S.C. § 1905," *Sears, Roebuck & Co. v. Eckerd*, 575 F.2d at 1200, "disclosure of information under a validly issued regulation is 'authorized by law' for the purposes of 18 U.S.C. § 1905."[6] *Doctors Hosp. of Sarasota, Inc. v. Califano*, 455 F.Supp. at 481. As a consequence, the Court further holds that the scope of Exemption 4 and 18 U.S.C. § 1905 is not equivalent, but that the prohibition of § 1905 is less than, and included in, the scope of Exemption 4 of the FOIA.

### C. *20 C.F.R. § 422.435(c) as Disclosure "Authorized by Law"*

Because the disclosure of plaintiff's cost reports is required by the HEW regulation, 20 C.F.R. § 422.435(c), plaintiff's contention that the disclosure violates federal law is essentially a challenge to the validity of the regulation. If the regulation is valid, then its required disclosure of the cost reports is authorized by law within § 1905's exception. On the other hand, if the regulation is not valid, then the cost reports may well be forbidden from disclosure by 18 U.S.C. § 1905.

#### 1. *Standard for Reviewing Administrative Regulations*

Congress, in providing for the review of administrative action generally, has provided for judicial review of administrative regulations challenged as invalid because they

6. *See* Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit*, Tex.L.Rev. at 618–24. Administrative "regulations should be viewed as 'law' that 'authorizes' disclosure of information that section 1905 would otherwise prohibit. . . . courts should not apply section 1905 to the release of exempt information pursuant to validly promulgated agency regulations." *Id.* at 618.

In summary, section 1905 only partially prohibits agency disclosure of business information—it permits disclosures that are "authorized by law." If agency regulations that provide for disclosure of business information covered by section 1905 are valid exercises of the rule-making authority granted to agencies by other laws, disclosure pursuant to the regulations is "authorized by law" within the meaning of section 1905. Therefore, the partial prohibition of section 1905, which clearly does not restrict disclosure of non-exempt information, should not preclude disclosure of exempt information pursuant to validly promulgated agency disclosure regulations. *Id.* at 624.

In 41 Op.Att'y.Gen. 221, 223 (1955), the Attorney General of the United States opined to the Federal Communications Commission that a request for information by the Senate Committee on Interstate and Foreign Commerce was "authorized by law" within section 1905's exemption. "[I]t is sufficient that the authorization is reasonably implied rather than express." *Id.* at 228.

are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). In order to be valid, an administrative regulation must meet three substantive standards. First, an administrative regulation must have a statutory source as its basis for issuance. Administrative regulations cannot be legally rootless, since "they are at most but offspring of statutes." *United States v. Mersky*, 361 U.S. 431, 437, 80 S.Ct. 459, 463, 4 L.Ed.2d 423, 429 (1960). To Congress alone, the legislative power of government has been allocated, and only Congress may enact laws without any specialized grant of authority. That legislative power to create statutory law may not be delegated to another branch of government such as administrative agencies of the executive branch. *Id.*; *Manhattan Gen. Equip. Co. v. CIR*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528, 531 (1936); *Neel v. United States*, 266 F.Supp. 7, 10 (5th Cir. 1966). The requirement of a statutory basis supplies the corresponding agency authority to promulgate regulations.

Second, administrative regulations, in order to be valid, must also be consistent with, and not contrary to, "the statute under which they are promulgated." *United States v. Larionoff*, 431 U.S. 864 at 873, 97 S.Ct. 2150 at 2156, 53 L.Ed.2d 48 at 56. A regulation beyond the scope of, or out of harmony with, underlying legislation "is a mere nullity." *Id.* at 873 n. 12, 97 S.Ct. at 2156 n. 12, 53 L.Ed.2d at 56 n. 12, *quoting Manhattan Gen. Equip. Co. v. CIR*, 297 U.S. at 134, 56 S.Ct. at 399, 80 L.Ed. at 531; *Neel v. United States*, 266 F.Supp. at 10. To make this determination, it is necessary for the Court to square the regulation against the statute that it purports to implement, comparing the sphere of authority of each. *Western Union Teleg. Co. v. FCC*, 541 F.2d 346, 354 (3d Cir. 1976), *cert. denied* 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977).

Finally, an administrative regulation must be reasonably related to advancing " 'the purposes of the enabling legislation.' " *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318, 330 (1973); *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474, 483 (1968); *National Welfare Rights Organiz. v. Mathews*, 174 U.S.App.D.C. 410, 418, 533 F.2d 637, 645 (1976); *Florida v. Mathews*, 526 F.2d 319, 323 (5th Cir. 1976); *Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841, 844 (5th Cir. 1974). Whether an administrative regulation is rationally related to furthering the purposes of the statute that it implements "is not a purely legal question," *Pan Amer. Petrol. Corp. v. FPC*, 352 F.2d 241, 244 (10th Cir. 1965), but is a mixed question of fact and law. From the informal factual record required by 5 U.S.C. § 553(b)–(e), the rational basis for the proposed regulation must be discernible. *National Welfare Rights Organiz. v. Mathews*, 174 U.S.App.D.C. at 421, 533 F.2d at 648; *Coakley v. Postmaster of Boston*, 374 F.2d 209, 210 (1st Cir. 1967); *Pan Amer. Petrol. Corp. v. FPC*, 352 F.2d at 244; *Professional Factoring Service Ass'n v. Mathews*, 422 F.Supp. 250, 255 (S.D.N.Y.1976). Without an informal, factual record in the Federal Register, or elsewhere, to reveal the reasonable relationship of a regulation to the statute that it purports to implement, the regulation will be deemed arbitrary and capricious. *National Welfare Rights Organiz. v. Mathews*, 174 U.S.App.D.C. at 421, 533 F.2d at 648; *Florida v. Mathews*, 526 F.2d at 324; *Professional Factoring Service Ass'n v. Mathews*, 422 F.Supp. at 255. However, in developing an informal, factual administrative record to reflect the rational relationship of a proposed regulation to its underlying statute, an agency is not required to make strict, rigorous findings, supported by substantial evidence, as when final agency decisions are based upon a formal record developed at an administrative proceeding. *Superior Oil Co. v. Federal Energy Regulatory Comm'n*, 563 F.2d 191, 200–01 (5th Cir. 1977). Since great deferential weight will be given to the agency's reasons, the test is a stringent, narrow one, and the burden of proof rests heavily upon the party challenging the regulation. *Florida v. Mathews*, 526

F.2d at 324–25; *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d at 844. An administrative regulation which satisfies these standards has the force and effect of law just as if it were prescribed in statutory terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 536 and n. 26, 97 S.Ct. 1305, 1314 and n. 26, 51 L.Ed.2d 604, 620 and n. 26 (1977); *United States v. Mersky,* 361 U.S. at 438, 80 S.Ct. at 463, 4 L.Ed.2d at 429; *Atchison, Topeka & Santa Fe Ry. Co. v. Scarlett,* 300 U.S. 471, 474, 57 S.Ct. 541, 543, 81 L.Ed. 748, 751 (1937).

Several decisions illustrate the procedure for reviewing challenges to the validity of HEW regulations. In *National Welfare Rights Organiz. v. Mathews, supra,* the D.C. Circuit examined the legislative history and judicial interpretation of the Social Security Act, 42 U.S.C. § 1302, in order to determine that it was the statutory source of HEW's authority to issue the challenged regulation. 533 F.2d at 640–41. After determining that 42 U.S.C. § 1302 was the statutory basis for the regulation in question, *id.* at 645, the Court of Appeals then examined the relationship between the regulation and the statute to determine if it was reasonable. *Id.* The court looked to the informal factual record, in order to decide whether the regulation advanced, or impeded, the underlying legislative purposes. *Id.* at 646 and n. 12, 648.

The State of Florida, based on its own statute, challenged a Medicaid HEW regulation in *Florida v. Mathews,* 526 F.2d 319 (5th Cir. 1976). The question was whether the HEW Secretary had "exceeded the authority vested in him by Congress" when he promulgated the regulation. *Id.* at 323. The Fifth Circuit discerned that the Social Security Act, 42 U.S.C. § 1302, supplied the statutory authority for the challenged regulation. *Id.* at 323 n. 9. The Court of Appeals then considered the reasonable relationship between the regulation and the statute, by examining the textual language of the statute, and its legislative history, and any subsequent congressional action. *Id.* at 323–24. A sufficient rational basis was discerned that the Court of Appeals rejected the view that the regulation was arbitrary and capricious. *Id.* at 324–25.

This Court's firsthand acquaintance with the procedure for reviewing challenged administrative regulations stems from *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d 841 (5th Cir. 1974). In that case, a challenged HEW regulation defining "reasonable costs" for purposes of Medicaid payments was upheld by this Court. On appeal, the Fifth Circuit found that the statutory source for the regulation was 42 U.S.C. § 1302, and that the regulation was reasonably related to furthering the purposes of that statute. *Id.* at 844. Moreover, the regulation was consistent with the scope of the statute's authority and the intent of Congress in enacting it. *Id.*

Finally, in *Professional Factoring Service Ass'n v. Mathews,* 422 F.Supp. 250 (S.D.N.Y.1976), the plaintiffs sought a declaratory judgment that a disputed HEW Medicaid regulation was invalid, and an injunction against the enforcement of the regulation. Looking to the legislative history of the Medicaid Act, the district court determined that 42 U.S.C. § 1302 was the statutory authority for the contested regulation. The court then found that the regulation was consistent with the scope of the statute, and reasonably related to furthering its purposes. *Id.* at 253. In reaching that conclusion, the district court considered the totality of the factual basis set forth in the informal, administrative record for promulgating the regulation. *Id.* at 255, 256. The district court held that the regulation neither exceeded its statutory authority, nor constituted an unreasonable, arbitrary, or capricious administrative instrument. *Id.* at 255.

2. *The Validity of 20 C.F.R. § 422.435(c)*

*Statutory Source.* Defendants maintain that § 1106 of the Social Security Act, 42 U.S.C. § 1306, is the statutory authority for the challenged regulation, 20 C.F.R. § 422.435(c). 42 U.S.C. § 1306 provides in pertinent part:

> No disclosure of . . . any file, record, report or other paper, or any infor-

mation, obtained at any time by the Secretary of Health, Education, and Welfare, . . . or by any officer or employee of [HEW] in the course of discharging their respective duties under this chapter, and no disclosure of any such file, record, report, or other paper, or information, obtained at any time by any person from the [HEW Secretary] . . . or from any officer or employee of [HEW] . . shall be made except as the [HEW Secretary] . . . may by regulations prescribe . . .

That statute prohibits the disclosure of information unless it is authorized under regulations issued by the Secretary. *Parkridge Hosp., Inc. v. Blue Cross & Blue Shield of Tenn.*, 430 F.Supp. at 1097.

On the basis of 42 U.S.C. § 1306, the Secretary expressly issued regulations, 20 C.F.R. § 401.1 et seq., to implement § 1306, while accommodating the requirements of the FOIA as it applies to information covered by § 1306. 42 Fed.Reg. 14703 (Mar. 16, 1977).

There is no question that both the statute, 42 U.S.C. § 1306, and the regulations expressly implementing it, 20 C.F.R. § 401.1 et seq., include plaintiff's cost reports. The legislative history of the statute indicates that it has consistently applied to any information presently or formerly possessed by the HEW Secretary and his agents, including intermediaries such as defendant Blue Cross.[7] Additionally, judicial interpretation of the statute has uniformly ascribed to it a broad coverage of information possessed by the HEW Secretary and his agents.[8] Similarly, the regulations implementing the statute, 20 C.F.R. § 401.1 et seq., demonstrate a persistent, but increasingly expansive, administrative interpretation of the scope of the information covered by § 1306(a).[9] Such a steadfast administrative

7. 42 U.S.C. § 1306(a) first appeared as a 1939 additive amendment to the 1935 Social Security Act. Act of August 10, 1939, Pub.L.No.76–379, 53 Stat. 1398, 76th Cong., 1st Sess. Apart from minor changes in proper nouns, corresponding to governmental reorganizations (Reorganization Plan No. 2 of 1946 abolished the Social Security Board and transferred functions of it and its chairman to the Federal Security Administrator, 60 Stat. 1095–96; Reorganization Plan No. 2 of 1949 transferred the functions of the Federal Security Administrator to the Secretary of Labor, 63 Stat. 1065, 81st Cong., 1st Sess.; Act of August 28, 1950, § 401, Pub.L.No. 81–734, 64 Stat. 558, created a Commissioner for Social Security within the Federal Security Agency; Reorganization Plan No. 1 of 1953, §§ 1, 4, 5, 8, created the Department of HEW and its Secretary, as well as a Commissioner of Social Security within the Department, and abolished the Federal Security Agency, transferring all of its functions to the HEW Secretary, 83rd Cong., 1st Sess.), section 1306 has remained essentially the same as when originally enacted in 1939.

During enactment of the 1950 amendments to the Social Security Act, the Senate attempted to restrict the scope of information both prohibited from, and authorized for, disclosure by § 1306(a). A Senate-proposed amendment would have allowed disclosure of wage-record information and statistical data only. All other information, disclosable by regulation under the authority of § 1306(a), would have been barred. Conf.Rep.No.2771, 81st Cong., 2d Sess., 120 (August 1, 1950), U.S.Code Congr'l Service, pp. 3287, 3482, 3511 (1950). The House bill, which prevailed at conference, "made no substantive change," retaining "existing law with respect to disclosure of information" under § 1306. S.Rep.No.1669, 81st Cong., 2d Sess. (May 17, 1950), U.S.Code Congr'l Service, pp. 3287, 3481 (1950) and Conf.Rep.No.2771, at 120, U.S.Code Congr'l Service, at 3511. See Act of August 28, 1950, § 403(d), Pub.L.No.81–734, 64 Stat. 559, U.S. Code Congr'l Service, pp. 561, 638–39 (1950). Section 1306(a), both in its prohibition, and in its exception allowing disclosure pursuant to regulations, has consistently throughout its legislative history applied to any information formerly or presently possessed by the HEW Secretary (or his predecessors in interest) and his agents.

8. *Schechter v. Weinberger*, 165 U.S.App.D.C. 236, 238, 506 F.2d 1275, 1277 (1974): ". . . [§ 1306(a)] is a blanket exclusion on disclosure of all files, records and reports compiled under the Social Security Act. . . . Read as a whole, § 1306 vests complete, uncharted discretion with respect to disclosure in the Secretary rather than being a specific exemption by statute."

*Serchuk v. Richardson*, No. 72–1212–Civ–PF (S.D.Fla. Nov. 28, 1972), ". . . [§ 1306(a)] is a blanket exclusion of 'any file, record, report, or other paper or any information, obtained at any time by the Secretary or any other officer or employee of the department of [HEW]' ", *aff'd* 493 F.2d 663 (5th Cir. 1974).

9. Although the regulation originally antedated § 1306(a) by two years (promulgated pursuant

interpretation, surviving congressional reenactments of the statute, is entitled to great weight and deference by the courts, unless clearly erroneous, *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134, 143 (1974); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371, 383–84 (1969); *Snyder v. Harris,* 394 U.S. 332, 338–40, 89 S.Ct. 1053, 1057–58, 22 L.Ed.2d 319, 325–26 (1969); *Zemel v. Rusk,* 381 U.S. 1, 8–11, 85 S.Ct. 1271, 1276–78, 14 L.Ed.2d 179, 185–87 (1965); *Commissioner of Internal Revenue v. Noel's Estate,* 380 U.S. 678, 681–82, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159, 162 (1965); *Udall v. Tallman,* 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616, 625–26 (1965); *Power Reactor Develop. Co. v. International Union of Elec., Radio & Machine Workers,* 367 U.S. 396, 413–14, 81 S.Ct. 1529, 1537–38, 6 L.Ed.2d 924, 935 (1961); *NLRB v. Gullet Gin Co.,* 340 U.S. 361, 365–66, 71 S.Ct. 337, 340, 95 L.Ed. 337, 343 (1951); *Helvering v. R. J. Reynolds Tobacco Co.,* 306 U.S. 110, 114–15, 59 S.Ct. 423, 425, 83 L.Ed. 536, 540–41 (1939); *Norwegian Nitrogen Prods. Co. v. United States,* 288 U.S. 294, 313–15, 53 S.Ct. 350, 357–58, 77 L.Ed. 796, 806–07 (1933); *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 931 n. 5 (5th Cir. 1975); *United States v. Groupp,* 459 F.2d 178, 182 (1st Cir. 1972); *NLRB v. North Ark. Elec. Coop.,* 446 F.2d 602, 607 (8th Cir. 1971); *Kay v. FCC,* 143 U.S.App.D.C. 223, 231–32, 443 F.2d 638, 646–47 (1970); *Bridgeport Hydraulic Co. v. Kraemer,* 219 F.2d 929, 931 (2d Cir. 1955).

Those regulations (20 C.F.R. § 401.1 et seq.) provide for release under the FOIA of information that would otherwise be prohibited by the general nondisclosure ban of 42 U.S.C. § 1306. See 20 C.F.R. § 401.1(a). As permissible regulations authorizing disclosure of information covered by § 1306, they come within the statute's exception for disclosures under regulations prescribed by the HEW Secretary. At the same time, those regulations parallel the provisions of the FOIA including its exemptions from mandatory disclosure. 20 C.F.R. § 401.2. Information covered by the FOIA's mandatory disclosure provisions are required to be released under the regulations as well. 20 C.F.R. § 401.3(b)(1)(ii). Information that is exempt from the FOIA's obligatory disclosure requirements may "nevertheless . . . be made available" in accordance with HEW's procedural, public information regulations "for disclosures which are in the public interest and consistent with obligations of confidentiality and administrative necessity." 20 C.F.R. § 401.3(b)(2).

HEW's procedural, public information regulations expressly include the regulations issued at 20 C.F.R. § 422.401 et seq. See 20 C.F.R. §§ 401.1(b), 401.2(a), and 401.3(b)(2). The HEW regulations at 20 C.F.R. § 422.401 et seq. do not conflict with, but augment procedurally, the regulations (20 C.F.R. § 401.1 et seq.) which implement 42 U.S.C. § 1306, by establishing (1) what information covered by that statute is availa-

to the 1935 Social Security Act, § 1102, 49 Stat. 647; see 2 Fed.Reg. 1053), after enactment of § 1306(a) in 1939, the regulation was intended to contain language very similar to § 1306(a), 5 Fed.Reg. 4846 (November 29, 1940).

Later amendments to the regulation have shown an increasingly expansive administrative interpretation of § 1306(a). In 1955, statutory language already present in § 1306(a) was added to the regulation, as well as additional language not contained in § 1306(a), 20 Fed. Reg. 5159 (July 20, 1955). In 1967 the regulation was substantially amended, deleting the 1955 amending language and adding language concerning information "obtained by or from . . . any person, agency, or organization with whom the Social Security Administration had entered into an agreement to perform certain functions . . . used in or in connection with [the Medicare Act]." The 1975 amendment to the regulation continued the language of the 1967 amendment. 40 Fed.Reg. 27649 (July 31, 1975). In 1977, the HEW Secretary once again amended 20 C.F.R. § 401.1 et seq. making it an Interim Regulation No. 1, to bring disclosures of information covered by 42 U.S.C. § 1306(a) into conformity with the FOIA, 42 Fed.Reg. 14703–05 (March 16, 1977). Language was expressly added including "information obtained by Medicare intermediaries or carriers in the course of carrying out agreements under [provisions of the Medicare Act]." The successive amendments to 20 C.F.R. § 401.1 et seq. reveal an increasingly broad administrative interpretation of the scope of information covered by 42 U.S.C. § 1306(a).

ble, and (2) how that information may be obtained. See 20 C.F.R. § 422.401.

The regulation under question in this case, 20 C.F.R. § 422.435(c), provides that cost reports submitted by Medicare providers "shall be made available to the public . . . [u]pon request in writing." Since plaintiff is the provider of services under the Medicare Act, its cost reports are information covered by 42 U.S.C. § 1306, for which disclosure is allowed under regulations prescribed by the HEW Secretary, and 20 C.F.R. § 422.435(c) is such a regulation. Hence, 42 U.S.C. § 1306 is the statutory source and basis for 20 C.F.R. § 422.435(c), the challenged regulation in this case. The parties do not dispute that, and the Court so holds.

*Consistency With Scope of Statute.* Since 20 C.F.R. § 422.435(c) applies to information within the range of the statute's coverage, see 20 C.F.R. §§ 401.1(b), 401.2(a), and 401.3(b)(2), the only question about whether that regulation is consistent with, or contrary to, the statute under which it was promulgated involves the form of the regulation. The statute permits the Secretary to authorize disclosures by prescribing regulations. 42 U.S.C. § 1306 ("may . . prescribe"). Likewise, the regulations which accommodate § 1306 to the FOIA permit release of information which is available under HEW public information regulations authorizing disclosures "in the public interest and consistent with obligations of confidentiality and administrative necessity". Cost reports like plaintiff's are available under 20 C.F.R. § 422.435(c), but the regulation mandates their release upon request.

In *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the Supreme Court upheld a mandatory regulation, Regulation Z, promulgated under a provision of the Truth-in-Lending Act which permits regulations determined by the Federal Reserve Board as "necessary or proper to effectuate" the statute's purpose. *Id.* at 361–62, 93 S.Ct. at 1656–57, 36 L.Ed.2d at 325. The Court rejected the argument that the regulation "exceeded the statutory authority". *Id.* at 371, 93 S.Ct. at 1661, 36 L.Ed.2d at 330. That decision rested on the principle that regulations, issued under the authority of a statute which "states simply that the agency may" promulgate regulations necessary to effectuate the statute, are valid as long as they are reasonably related to the statute's purposes. *Id.* at 369, 93 S.Ct. at 1660, 36 L.Ed.2d at 329–30. *See Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761, 763–64 (5th Cir. 1977); *Director, Office of Workers' Compensation Program, United States Dep't of Labor v. National Mines Corp.,* 554 F.2d 1267, 1275 (4th Cir. 1977); *Compton v. Tennessee Dep't of Public Welfare,* 532 F.2d 561, 564 (6th Cir. 1976).

In a recent decision, *Binns v. Panama Canal Co.,* 459 F.Supp. 956 (D.C.Z.1978), an Army regulation, which had reformulated in mandatory terms the permissive language of the statute under which it had been promulgated, was neither challenged nor invalidated as exceeding its statutory authority. *Id.* at 957 n. 2. *See Reinheimer v. Panama Canal Co.,* 413 F.2d 153, 154 (5th Cir. 1969). The fact that 20 C.F.R. § 422.-435(c) mandates the availability, upon written request of information (cost reports) which the statute permits to be disclosed by administrative regulations, does not make that regulation invalid. Only if the mandatory regulation is not reasonably related to advancing the purposes of the permissive statute, which it is promulgated to implement, will the regulation be invalid.

*Reasonableness.* Whether 20 C.F.R. § 422.435(c) is a reasonable means of effectuating 42 U.S.C. § 1306(a) is ultimately a legal determination. Nevertheless, that determination is derived from, and dependent on, an initial examination of the rational basis for the regulation as discerned from the informal, factual record. From the total factual basis for promulgating the regulation, as set forth in the composite, formal, administrative record, the Court must conclude that 20 C.F.R. § 422.435(c) is reasonably related to the statutory source of authority under which it was issued.

First, in May, 1974, a Memorandum of Record concerning the disclosure of Medicare cost reports was prepared by the agency. That memorandum considered (1) the public's interest, (2) the competitive need for privacy, (3) the existence of any actual confidentiality, and (4) the likelihood of risk of injury. The agency concluded that the public has a right to be informed of public records pertaining to public business and that cost reports are such public records. Another conclusion voiced the agency's doubt that release of cost reports would adversely effect the competitive position of a provider of Medicare services. It was considered unlikely, objectively, that the information contained in cost reports is in fact confidential and "highly speculative" that a risk of financial injury was at stake. The memorandum reflects, therefore, the agency's determination that in order to open up public business to the public the cost report information should be disclosed and there were no "compelling reasons to the contrary."

Second, as required by 5 U.S.C. § 553(b)–(e), the Secretary gave notice of and published the proposed regulation to the interested public. 40 Fed.Reg. 17849, 17852 (April 23, 1975). After receiving comments "from a variety of sources including representatives of national, state, and local organizations", 40 Fed.Reg. 27648 (July 1, 1975), the Secretary set forth his consideration of those comments and his reasons for issuing the regulation. *Id.* at 27649. He considered the alleged risk of irreparable harm, and rejected it, noting that no evidence had been offered "in support of this assertion." Likewise, the criticism that cost report information "does not concern the public", but is only useful to competitors, was found unacceptable. *Id.* In short, the Secretary once again concluded that cost reports are public records about public business, involving the expenditure of public funds, and therefore "it is not in the public interest to withhold the reports from the public." *Id.*

Finally, the HEW public information regulations (20 C.F.R. § 401.1 et seq.), which expressly include the regulations among which 20 C.F.R. § 422.435(c) appears, allow for the release of information such as the cost reports only after it is determined that the information is in fact not confidential.

> In determining whether such information is in fact confidential, consideration may be given to such factors as (1) the general custom or usage in the occupation or business to which the information relates that it be held confidential, (2) the number and situation of the individuals who have access to such information, (3) the type and degree of risk of financial injury to be expected if disclosure occurs, and (4) the length of time such information should be regarded as retaining the characteristics noted. 45 C.F.R. § 5.72(c).

If under an analysis of those factors, information is not confidential in fact, it is a fortiori not inconsistent with any obligations of confidentiality, and it may be disclosed if such disclosure is "in the public interest and consistent [also] with obligations of . . . administrative necessity." 20 C.F.R. § 401.3(b)(2). In the May, 1974, Memorandum of Record, those factors were expressly considered. When 20 C.F.R. § 422.435(c) was proposed, the Secretary considered the same factors in reviewing comments received from the public. Thus, in promulgating a regulation which mandates the disclosure of cost reports, the Secretary unquestionably considered and satisfied the criteria in 45 C.F.R. § 5.72(c). Since the Secretary has determined that the public interest requires, and is best served, by release of cost report information to which the regulation applies, and since those cost reports are part of the information covered by the statute, 42 U.S.C. § 1306(a), which the regulation implements, the Court holds that the regulation is reasonably related to furthering the statutory provisions.

### *Conclusion*

The Court holds that, whether plaintiff's cost reports are exempted from mandatory disclosure by the FOIA, under Exemption 4, or not, the regulation which requires their disclosure, 20 C.F.R. § 422.435(c), is a valid

administrative regulation, and the Trade Secrets Act, 18 U.S.C. § 1905 does not preclude such disclosure. Accordingly, the preliminary injunction in this case, *Westchester Gen. Hosp., Inc. v. HEW,* 434 F.Supp. 435, will be dissolved, and judgment entered for defendants.